# EXHIBIT 2




GOVERNOR KATIE HOBBS                                                                                          DIRECTOR JACKIE JOHNSON

September 15, 2025



**Re:** Notice Regarding Prediction Markets

Dear ▮▮▮▮▮▮▮,

On June 3, 2025, Clifford Holden, Assistant Director - Certification & Licensing, sent a letter on behalf of the Arizona Department of Gaming ("the Department"), to Event Wagering Operators, including Designees and Management Services Providers, requesting certain information related, in part, to Designated Contract Markets ("DCMs") and the selling of contracts on such things as the outcome of sporting events. We have now received several responses to our inquiry and have had meetings with some Designees. We have also learned that several licensees, including Fantasy Sports Contest Operators, are planning to enter the prediction marketplace by acquiring an existing DCM, becoming a DCM or a Futures Commission Merchant ("FCM"), or associating or partnering with a DCM or FCM directly or indirectly, to offer, enable, or sell event contracts outside the framework of state gambling laws.

I write now to make certain that you are aware of the State of Arizona's standpoint. Offering or selling event contracts to persons located within Arizona without a license from the Department violates Arizona law. *See* A.R.S. §§ 13-3301 *et seq*, 5-1201 *et seq*, 5-1301 *et seq*, and A.A.C. R19-4-101 thru R19-4-229. The Department has stated this position to the Commodity Futures Trading Commission by way of the attached letter. The Department has also sent cease and desist letters to Kalshi, Crypto.com, and Robinhood.

Importantly, as you know, the Department is obligated to evaluate all applicants to determine suitability. As part of this process, the Department must also complete background checks and may

Notice Regarding Prediction Markets
September 15, 2025
Page **2** of **2**

monitor the ongoing conduct of licensees (see e.g. A.R.S. §§ 5-1202 and 5-1302). This includes the conduct of not just the licensee itself, but also the conduct of its owners, related entities, principals, agents, employees, and those entities or persons with which it maintains any relationship. It also includes conduct in other jurisdictions, not just Arizona.

If an Arizona operator chooses to offer, enable, or sell event contracts to persons in this state through their own DCM or FCM (or those under common ownership or operated by a related entity) without a license, or decides to associate, coordinate, or otherwise partner directly or indirectly with persons or entities offering or facilitating the offering, enabling, or sale of event contracts in Arizona without a license, the Department will consider that conduct as it evaluates the continued suitability for that person or entity to maintain a license.

In addition, even if the licensee is not associated directly with the offering or sale of event contracts to persons in Arizona, its relationship with other persons or entities and conduct in other jurisdictions remains at issue. By way of example only, in determining suitability, the Department will consider any relationship between the licensee (to include its owners, related entities, principals, agents, or employees) and a person or entity offering, enabling, or selling event contracts in Arizona. In addition, the Department will consider the conduct of a licensee, or its owners, related entities, principals, agents, or employees, to offer, enable, or sell event contracts in other jurisdictions, or to maintain any relationship with a person or entity that is engaged in that activity. So, for example, if the Department believes that an entity related to a licensee is partnered with a company that is selling event contracts in a jurisdiction outside Arizona in violation of the laws of that jurisdiction, that might (depending on circumstances) impact a licensing decision.

Note that the Department may deny, revoke, or suspend licenses. A.R.S. §§ 5-1209(A) and 5-1302(D). It may also place conditions on a license. This can include issuing fines to, or otherwise sanctioning, licensees. See A.A.C. R19-4-146 and R19-4-223. The Department requires notice of material changes to your operations, updates to previously provided information, and honesty and transparency in response to its inquiries.

All of us have a responsibility to uphold the integrity of gaming in Arizona. Neither the citizens of this state nor your gaming operations are, in the long run, served by illegal, unlicensed, and/or unregulated gambling.

Thank you for your consideration.

Sincerely,

[signature redacted]

Jackie Johnson
Director
Arizona Department of Gaming

Attachment: Arizona Department of Gaming comment letter to the CFTC, dated June 2, 2025

 

GOVERNOR KATIE HOBBS                                                    DIRECTOR JACKIE JOHNSON

June 2, 2025

**Sent Via U.S. Mail to:**

The Honorable Caroline Pham
Acting Chairperson
Commodity Futures Trading Commission
Three Lafayette Centre
1155 21st Street, NW
Washington, DC 20581

**And Via Email to:**

ChairmanPham@cftc.gov

**Re: Arizona Comment on Prediction Markets**

Dear Acting Chairperson Pham,

I am Director of the Arizona Department of Gaming (the "Department"), and write to you on behalf of the State of Arizona (the "State"). The Department is the agency responsible for the regulation of gambling in Arizona and the investigation of illegal gambling activities. By this letter, the State expresses to you its opposition to the activities being conducted here by certain Designated Contract Markets, to include Kalshi, Crypto.com, and Robinhood (the "DCMs"), which are under the regulatory oversight of the Commodity Futures Trading Commission ("CFTC").

As you are aware, the DCMs are enabling the purchase of "contracts" in Arizona on future events including sports. Whether a contract will pay its buyer depends on whether that person correctly predicts the result of the event and buys a contract for the correct outcome. This conduct amounts to illegal gambling in Arizona,[1] the promotion of which is a felony. A.R.S. § 13-3303.

---

[1] In Arizona, a "wager" is defined as a "thing of value risked on an uncertain occurrence." Arizona Revised Statute ("A.R.S.") § 5-1301(23)(a). "Event wagering" is defined to mean "accepting wagers on sports events or other events . . . by any system or method of wagering, including in person or over the Internet through websites and on mobile devices." A.R.S. § 5-1301(4)(a). The operation of event wagering in Arizona is allowed only if conducted pursuant to A.R.S. §§ 5-1301 *et seq.*, which requires, among other things, licensure. *See e.g.*, A.R.S. § 5-1303(A). Kalshi, Crypto.com, and Robinhood are not licensed and their operation of event wagering in Arizona is illegal. *See* A.R.S. § 13-3305(A)(unless it amounts to regulated gambling, it is a crime to accept wagers on the result of "any race, sporting event, contest or other game of skill or chance or any other unknown or contingent future event or occurrence whatsoever.").

Arizona Comment on Prediction Markets
June 2, 2025
Page 2 of 5

The DCMs claim that their operations enable "trading" of financial derivatives, which is conduct regulated by the CFTC. In truth, there is no meaningful difference between buying one of the contracts offered by the DCMs and placing a bet with any other sportsbook. And, whatever regulation the CFTC undertakes, it does not reflect the desires of the citizens of Arizona.

To be clear, the people of the State have significant interest in the CFTC taking action to stop the DCMs. When the Arizona Legislature passed the 2020 Gaming Act, A.R.S. §§ 5-1301 *et seq.* (the "Act") allowing event wagering, it was only after a great deal of thought and consultation with the public and experts, including the Department and Tribal nations that operate casinos and are well-versed in gambling regulation. Moreover, rules implementing the Act were put through an extensive public comment process. The outcome was a series of laws and rules that reflect the policies of the State and the values of Arizonans:

1. <u>Operators</u> - Event wagering of any type may only be operated in the State by a limited number (no more than 20) of Arizona professional sports teams and Tribal nations and their partners, ensuring that event wagering operations have a local impact. A.R.S. § 5-1304(A). These event wagering operators ("EWOs") must meet a wide range of regulatory standards related to platforms, reserves, bonds, insurance, record keeping, risk management, auditing, reporting, accounting, internal control systems, house rules, servers, cloud storage of data, technical standards, system standards, testing, certification, shipping and installation, and the use of official league data, all intended to protect the public's interests. *See* A.R.S. §§ 5-1302(G), 1313(A), 1314, and 1319; Arizona Administrative Code ("A.A.C.") R19-4-111, 113-4, 116, and 118-26.

2. <u>Licensing</u> - EWOs, their providers, limited event wagering operators, suppliers, affiliates, and employees are subject to the Department's licensing process, including background checks, investigations, and the payment of licensing fees of up to $750,000. These investigations ensure that licensees are suitable in terms of character, business acumen, and financial stability, thereby protecting Arizona citizens from potential bad actors and reducing the risk of financial harm. Licensees are subject to the Department's jurisdiction to enforce regulations through fines or license revocation, and the fees are used in part to pay for regulation. There are also restrictions regarding who can be licensed, including people with insider knowledge or who could have an influence on the outcome of events. *See* A.R.S. §§ 5-1302(C-E), 1304(B-C), 1305, and 1306-1311(A); A.A.C. R19-4-104-5.

3. <u>Geolocation</u> – EWOs are required to geolocate their operations to ensure that only people located in Arizona are engaging in event wagering, in respect of the laws and requirements of other state and Tribal jurisdictions. A.R.S. § 5-1302(G)(2); A.A.C. R19-4-117.

4. <u>Tax Reporting and Debt Set Off</u> – EWOs are required to ensure proper federal, state, and local tax reporting. Significantly, they are also required to retain money from winning players to pay outstanding child support, State tax debt, and debts to the Arizona Department of Economic Security. A.R.S. §§ 5-1302(G)(7) and 1320(F); A.A.C. R19-4-151.

5. <u>Responsible Gaming</u> - EWOs are prohibited from offering credit to players and have restrictions on the type of advertising they can conduct (*e.g.*, to people under 21 years of age or on college campuses). A.R.S. § 5-1311(B); A.A.C R19-4-110. The Department and EWOs are required to maintain a statewide self-exclusion program. EWOs must also notify players of the means to seek help for problem

gambling and maintain programs to mitigate problem gambling and curtail compulsive gambling. Further, players are limited in the forms of payment they can use and are prohibited from using assistance to needy people. See A.R.S. § 5-1302(B)(5) and 1320; A.A.C. R19-4-128 and 150.

6. <u>Patron Protection</u> - Along with all the other safeguards noted herein, players also have a dispute resolution process with EWOs and the Department. A.A.C. R19-4-148.

7. <u>Age and Identity Verification</u> – EWOs must verify an individual's age and identity before allowing the individual to create an account and place a wager. They must also ensure the individual is not under the age of 21, self-excluded, or otherwise prohibited from participating in event wagering in Arizona. A.R.S. § 5-1311(B); A.A.C. R19-4-133.

8. <u>Integrity</u> - EWOs must implement policies and procedures to prevent fraud, cheating, money laundering, and collusion, must take steps to ensure player account security, and must contract with an integrity monitoring provider licensed by the Department to ensure against, among other things, match fixing. They must also report suspicious conduct, cooperate in investigations, and conduct system integrity and security assessments. See A.R.S. §§ 5-1302(G)(6), 1313(A)(7), and 1316; A.A.C. R19-4-115 and 127. The Department is also required to establish a list of people barred from event wagering because they pose a threat to the integrity of the gambling or to the public welfare, which EWOs must exclude from their operations. A.A.C. R19-4-149.

9. <u>Events and Wager Types</u> - All events and wager types must be reviewed and approved by the Department before they are offered for wagering by an EWO. A.R.S. § 5-1302(G)(2); A.A.C. R19-4-129. EWOs are prohibited from accepting wagers on the outcome of high school sports and the performance of collegiate teams and athletes. All events must be subject to effective supervision and integrity safeguards, and a sports governing body may object to the acceptance of wagers on its events in the case of an integrity concern. See A.R.S. §§ 5-1302(G)(2), 1311(B)(4), and 1315.

10. <u>Privilege Fees</u> – EWOs are required to pay the State 8% of adjusted gross event wagering receipts for retail operations and 10% of adjusted gross event wagering receipts for mobile operations. These fees go to the State's general fund as well as for gambling regulation. A.R.S. §§ 5-1318; A.A.C. R19-4-111. EWOs paid $42,701,533.00 in privilege fees to the State in calendar year 2024.

The Act is thus a reflection of the fact that the people of the State wanted only certain entities to operate event wagering, to eliminate illegal sports betting in the State, to carefully limit and regulate event wagering in a manner reflecting Arizona values, and to use it to raise money for all Arizonans. It is a simple fact that the CFTC, in regulation of the DCMs, will *never* establish all the above requirements, compensate the State for lost revenue, and otherwise protect Arizona's citizens to the same degree as set out above. Moreover, the Act was passed by the Arizona legislature with a broad coalition of support to include Tribal nations, which have the opportunity under the Act to apply for licensure as EWOs. In fact, the Act is embodied in the State's most recent tribal-state gaming compacts (signed pursuant to the Indian Gaming Regulatory Act and approved by the Secretary of the U.S. Department of the Interior) entered into with 22 Tribes existing within the exterior boundaries of the State. These compacts follow over 30 years of cooperation between the State and Tribes to balance their respective interests and carefully regulate and share in the benefits of legal gambling. Yet now the DCMs have come into Arizona and upset these carefully constructed agreements, despite the extensive requirements surrounding

Arizona Comment on Prediction Markets
June 2, 2025
Page 4 of 5

gambling on Indian lands, the most relevant of which is that the gambling must be operated by Tribal nations themselves.[2]

Congress has long recognized that the individual states must be able to decide what approach to gambling best suits their citizens. Federal legislation relating to gambling is geared towards supporting state law gambling restrictions.[3] The State does not accept the idea that for years states have blindly passed legislation and regulated event wagering without knowing that Congress secretly upended its historical approach to gambling in the Commodities Exchange Act, a fact only just now revealed by the DCMs.

Presently, the DCMs offering event contracts are avoiding State requirements and regulations by claiming classification as financial derivatives under CFTC oversight. This gives them a competitive advantage over other EWOs. They do not incur any regulatory costs or costs associated with State law compliance. They also avoid all licensing and privilege fees. The public suffers as a result. The DCMs operate in a manner that does not reflect State policy and the EWOs, that do pay fees to the State, suffer unfair competition. The amount of illegal online gambling currently taking place in Arizona is unprecedented, and the fact that the DCMs can conduct unregulated event wagering only encourages bad actors to further ignore State law. All of this in turn has a negative financial impact on other legal (and carefully regulated) gambling taking place in the State by Tribal nations pursuant to A.R.S. § 5-601.02. Those Tribal gambling operations contributed over $170 million to the State and local jurisdictions last year.

The DCMs claim that, earlier this year, the CFTC allowed their sports outcome contracts to take effect without review or comment. Since then, the CFTC, at the last minute, cancelled a scheduled roundtable to discuss State and Tribal concerns. And, most recently, the CFTC dropped its appeal against Kalshi in the U.S. Court of Appeals for the D.C. Circuit. The CFTC's inaction in enforcing its own rules, specifically, 17 CFR 40.11(a)(1), has prioritized the private business concerns of a handful of DCMs over the public's interests. The State respectfully requests that the CFTC reconsider its actions and inaction in light of the State's concerns and conclude that the DCMs' offering of event contracts is gambling, is contrary to the public interest, and should be prohibited.

Sincerely,

[signature redacted]

Jackie Johnson
Director
Arizona Department of Gaming

---

[2] Under the Indian Gaming Regulatory Act, 25 U.S.C. § 2710(b)(2), a Tribe must "have the sole proprietary interest and responsibility for the conduct of any gaming activity" on its lands and all net revenues from that gaming are to be used only to benefit the Tribe.
[3] For example, the Illegal Gambling Business Act, 18 U.S.C. § 1955 (1970), makes it a federal crime to conduct an "illegal gambling business," which it defines to mean, in part, a business that violates "the law of a State or political subdivision in which it is conducted."

Arizona Comment on Prediction Markets
June 2, 2025
Page **5** of **5**

Cc via U.S. mail to:

Thomas Smith
Acting Director, Market Participants Division
Commodity Futures Trading Commission
Three Lafayette Centre
1155 21st Street, NW
Washington, DC 20581

Brian Young
Director, Division of Enforcement
Commodity Futures Trading Commission
Three Lafayette Centre
1155 21st Street, NW
Washington, DC 20581

100 N. 15th Ave., Suite 202, Phoenix, AZ 85007
Tel 602.771.4263   Fax 602.255.3883

gaming.az.gov