Adam E. Lang (#022545)
Matt Jarvey (#031350)
Derek C. Flint (#034392)
Taryn J. Gallup (#035002)
SNELL & WILMER LLP
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
Telephone:   602.382.6000
Facsimile:    602.382.6070
Email: alang@swlaw.com
        mjarvey@swlaw.com
        dflint@swlaw.com
        tgallup@swlaw.com

Neal Katyal (*pro hac vice* forthcoming)
Joshua B. Sterling (*pro hac vice* forthcoming)
Colleen E. Roh Sinzdak (*pro hac vice* forthcoming)
William E. Havemann (*pro hac vice* pending)
**MILBANK LLP**
1101 New York Avenue NW
Washington, DC 20005
Telephone: 202-835-7500
Facsimile: 202-263-7586
Email: nkatyal@milbank.com
        jsterling@milbank.com
        crohsinzdak@milbank.com
        whavemann@milbank.com

Grant R. Mainland (*pro hac vice* pending)
Andrew L. Porter (admitted *pro hac vice*)
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
Telephone: 212-530-5000
Facsimile: 212-530-5219
Email: gmainland@milbank.com
        aporter@milbank.com

*Attorneys for Plaintiff*
*KalshiEX LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| KalshiEX LLC, | No. CV-26-01715-PHX-MTL |
| Plaintiff, | **PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE** |
| v. | |
| Jackie Johnson, in her official capacity as Director of the Arizona Department of Gaming; Douglas Jensen, in his official capacity as Chief Law Enforcement Officer of the Arizona Department of Gaming; Arizona Department of Gaming; and Kristin K. Mayes, in her official capacity as Attorney General for the State of Arizona, | |
| Defendants. | |

Federal courts have a "virtually unflagging" obligation to exercise jurisdiction over suits that are properly before them. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court recognized an "extraordinary and narrow" exception to that obligation that applies where a federal action would interfere with ongoing state court proceedings regarding important state interests. *Arevalo v. Hennessy*, 882 F.3d 763, 765 (9th Cir. 2018) (citation omitted).

There is no basis to abstain in this case, in which Arizona has cobbled together criminal charges against a federally regulated derivatives exchange to interfere with ongoing federal proceedings that raise an important question of federal law. It is undisputed that Kalshi filed its federal suit before any state charges were filed—indeed, before Arizona had even informed Kalshi that it was a subject of a criminal investigation. The federal suit involves important federal interests. Kalshi seeks to vindicate Congress's decision to grant "exclusive jurisdiction" to regulate derivatives trading to the Commodity Futures Trading Commission ("CFTC"). 7 U.S.C. § 2(a)(1)(A). The CFTC itself recently filed an amicus brief in a Ninth Circuit appeal addressing identical issues to make clear that state proceedings like the ones brought by Defendants are plainly preempted. CFTC Amicus Br. at 1, 21, *N. Am. Derivatives Exch., Inc. v. Nevada*, No. 25-7187 (9th Cir. Feb. 17, 2026), Dkt. No. 38.2 ("CFTC Br.").

The state interests here, in sharp contrast, are minimal. The federal government's exclusive regulatory authority makes that clear, and Arizona's own state law is in accord. Defendants allege that Kalshi has violated Arizona's gambling laws by permitting Arizonans to make transactions on Kalshi's nationwide commodities exchange. But Arizona's gambling laws expressly exempt "bona fide business transactions," "including contracts for the purchase or sale at a future date of securities *or commodities*." A.R.S. § 13-3301(6) (emphasis added). Given that the state law expressly exempts commodities transactions from the definition of "gambling," and Kalshi runs a commodities exchange, Arizona's own laws belie any real state interest here.

- 1 -

Even if the basic requirements for *Younger* abstention were somehow met, abstention would be unwarranted because this case presents the trifecta of "bad faith, harassment" and "other unusual circumstance[s]" that counsel against abstention. 401 U.S. at 54. Last June, Kalshi and the Arizona Attorney General's Office agreed that neither party would bring judicial proceedings against the other without providing advance notice. Havemann Decl. Ex. 4.[1] After that discussion, Defendants said nothing to Kalshi about initiating judicial proceedings, nor did Defendants suggest that Kalshi could be the subject of a criminal prosecution. Earlier this month, after Defendants filed an amicus brief adverse to Kalshi, Kalshi contacted Defendants to remind them of the June 2025 agreement and to confirm that Defendants were not planning to proceed against Kalshi. Havemann Decl. Ex. 2. Defendants said nothing in response, forcing Kalshi to file this federal lawsuit to prevent Defendants from subjecting Kalshi to preempted state laws. Even then, when Kalshi contacted Defendants to confirm that they were not planning state proceedings that would necessitate a temporary restraining order ("TRO"), Defendants stayed silent. The very first communication that Kalshi received from Defendants suggesting that Kalshi was the subject of state proceedings was a copy of the criminal information Defendants sent Kalshi one minute *after* the status conference before this Court began, notifying Kalshi that they filed the criminal information immediately before the conference.

The only inference is that Defendants rushed to file charges against Kalshi for the purpose of depriving this Court of jurisdiction to give Kalshi redress. Even worse, unlike the handful of other states that have tried to override the CFTC's exclusive jurisdiction by bringing state proceedings against Kalshi, Arizona filed *criminal*—rather than civil—charges, seemingly in the hopes of avoiding the risk of removal to federal court. No other state has gone so far as to charge a company with criminal misconduct for offering federally lawful contracts on a federally regulated derivatives exchange. Defendants brought those charges without even informing Kalshi it was under investigation—and apparently without

---

[1] Citations to the Havemann Declaration refer to the Declaration of William E. Havemann, submitted in support of this Response.

conducting any real investigation at all.  *See* Havemann Decl. Ex. 4.  And Defendants brought those charges even though the CFTC—Kalshi's exclusive federal regulator—recently filed an amicus brief in the Ninth Circuit, forcefully explaining that the federal government has exclusive jurisdiction over Kalshi's activities.  *Younger* abstention, which is justified by federal-state comity concerns, is unwarranted where a conflict between the federal government and a state is "impossible to avoid."  *United States v. Morros*, 268 F.3d 695, 708 (9th Cir. 2001).  While the federal government has not, as of this filing, participated in *this case*, its support of Kalshi in the Ninth Circuit is further reason to reject abstention.

More than a century ago, the Supreme Court recognized in *Ex parte Young*, 209 U.S. 123 (1907), that a federal forum must be available to spare litigants from state prosecutions that violate federal rights.  Here, Defendants seek to use *Younger* to render *Ex parte Young* a nullity.  This Court should adhere to its "virtually unflagging obligation" to exercise jurisdiction over Kalshi's meritorious preemption suit.  *Colo. River*, 424 U.S. at 817.

## BACKGROUND

### I.      Kalshi's Operation Under An Exclusive Federal Regulatory Scheme.

In 1974, Congress established the CFTC as the federal agency empowered to oversee and regulate derivatives exchanges and granted the CFTC "exclusive jurisdiction" to regulate trading on the exchanges it oversees, thus "supersed[ing]" the "regulatory authorities" of "any State."  7 U.S.C. § 2(a)(1)(A).  This legislation was designed to "[b]ring[] all futures trading under federal regulation."  *Commodity Futures Trading Commission Act: Hearings Before the S. Comm. on Agric. & Forestry on S. 2485, S. 2578, S. 2837, and H.R. 13113*, 93d Cong. 848 (1974).  In granting the CFTC exclusive jurisdiction, Congress sought to "preempt the field."  H.R. Rep. No. 93-1383, at 35 (1974).

As explained in more detail in Plaintiff's Complaint and motion for a preliminary injunction, *see* Compl. at ¶¶ 1, 29-41, 48-59, Dkt. No. 1; Mot. for Prelim. Inj. and TRO at 3-9, Dkt. No. 11, Kalshi is a designated contract market ("DCM") under the Commodity

Exchange Act ("CEA").  Accordingly, the CFTC has "exclusive jurisdiction" over derivatives traded on its platform, including "accounts, agreements . . . and transactions involving swaps or contracts of sale of a commodity for future delivery." 7 U.S.C. § 2(a)(1)(A).  This exclusive jurisdiction extends to "event contracts," a type of derivative contract that allows users to trade on the occurrence of financially significant events. *KalshiEX LLC v. CFTC*, No. 23-3257, 2024 WL 4164694, at *2 (D.D.C. Sep. 12, 2024). Under the CEA, an "occurrence" or "contingency" is one type of "commodity" subject to federal regulation.  7 U.S.C. § 1a(19); *see id.* § 7a-2(c)(5)(C) (event contracts are "agreements, contracts, transactions, or swaps in excluded commodities").

**II.     Defendants' Cease-And-Desist Letter And Subsequent Threats To Kalshi.**

Arizona law defines "[g]ambling" or "wager" to include "risking . . . something of value for the opportunity to obtain a benefit from" "a future contingent event." A.R.S. § 13-3301(6).  "Event wagering" means "accepting wagers on sports events or other events . . . by any system or method of wagering." A.R.S. § 5-1301(4)(a).  Given that this broad definition of gambling might otherwise be understood to prohibit commodities trading, Arizona law provides that the term "gambling," "gamble," or "wager" "*does not include* bona fide business transactions . . . *including contracts for the purchase or sale at a future date of securities or commodities*." A.R.S. § 13-3301(6) (emphasis added).

On May 21, 2025, the Arizona Department of Gaming ("ADG") nonetheless sent Kalshi a cease-and-desist letter claiming that its offering of event contracts without a state license was a form of "gambling" under Arizona law. Dkt. No. 11-2, Ex. 1 ("Porter Decl."). The letter directed Kalshi to "cease gambling operations in Arizona," warned that Kalshi is participating in illegal "event wagering," and threatened the "filing of criminal charges or a civil action against Kalshi and/or its principals or employees." *Id.* at 1-2.

Less than two weeks later, Arizona appeared to switch course.  On June 2, 2025, the Director of ADG sent a letter to the Acting Chairman of the CFTC acknowledging that "Designated Contract Markets" including Kalshi "are under the regulatory oversight of the Commodity Futures Trading Commission." Porter Decl., Ex. 2, at 1.  The letter claimed

that Arizona had an interest "in the CFTC taking action to stop the DCMs," an acknowledgment of the CFTC's jurisdiction over Kalshi's contracts. *Id.* at 2.

On June 10, 2025, following receipt of the cease-and-desist letter, and following ADG's letter to the CFTC, Kalshi's counsel met with representatives of ADG and the Arizona Attorney General's Office to reiterate that Kalshi falls within the CFTC's exclusive jurisdiction, and that its contracts are lawful under federal law. Havemann Decl. ¶¶ 5–6. Kalshi explained that it hoped to avoid litigation in Arizona but that it would need to protect itself if it had reason to fear imminent state-court enforcement under preempted laws. *Id.* at ¶ 7. During this meeting, a representative of the state indicated that the state was not pursuing a civil or criminal action against Kalshi at that time, and that the state was willing to provide Kalshi advance notice of any state enforcement, provided that Kalshi correspondingly agreed to provide the state advance notice if it was to file a lawsuit against the state. *Id.* at ¶¶ 8–9. Kalshi agreed to provide this notice. *Id.* at ¶ 8.

The state officials' assurances that they would provide Kalshi notice in advance of any enforcement were critical to persuading Kalshi that no state-court enforcement was imminent, and that Kalshi therefore had no need to bring a preemptive suit under *Ex parte Young*, as Kalshi had recently done in other states that had sent Kalshi cease-and-desist letters but had been unwilling to provide similar assurances. *See* Mot. for TRO and Prelim. Inj. at 3, *KalshiEX, LLC v. Hendrick*, No. 2:25-cv-00575 (D. Nev. Mar. 28, 2025), Dkt. No. 18; Mot. for TRO and Prelim. Inj. at 10–11, *KalshiEX, LLC v. Flaherty*, No. 1:25-cv-02152 (D.N.J. Mar. 29, 2025), Dkt. No. 2; Mot. for TRO and Prelim. Inj. at 2–3, *KalshiEX, LLC v. Martin*, No. 1:25-cv-01283 (D. Md. Apr. 21, 2025), Dkt. No. 2.

### III.    Kalshi's Preemption Litigation, Including In The Ninth Circuit, And The CFTC's Participation In Support Of Kalshi.

Kalshi's litigation with other state officials who have sought to subject Kalshi's contracts to state gambling laws has produced several preliminary injunctions against unlawful state enforcement proceedings. Kalshi was granted such relief by federal courts in Nevada, New Jersey, and Tennessee, on the ground that the CEA preempts state

regulation of Kalshi. Kalshi was denied preliminary injunctions in Maryland and Ohio. In November 2025, the federal court in Nevada, after previously granting Kalshi a preliminary injunction, dissolved that injunction. Kalshi's appeal from the Nevada district court's order dissolving Kalshi's injunction is fully briefed in the Ninth Circuit, and it has been set for oral argument on April 16, 2026. *See KalshiEX, LLC v. Assad*, No. 25-7516 (9th Cir.). Similar appeals are pending in multiple other federal courts.

Every district court that has weighed in on the preemption question to date did so without the benefit of the CFTC's participation. But on February 12, 2026, the CFTC made its views clear by filing an amicus brief in a case consolidated with *Assad* in the Ninth Circuit decisively supporting Kalshi's position and defending its exclusive jurisdiction. *See* CFTC Br. at 2-3, 17-18, 28-29. The brief explained that "[s]tates cannot invade the CFTC's exclusive jurisdiction over CFTC-regulated designated contract markets ('DCMs') by re-characterizing swaps trading on DCMs as illegal gambling"; that allowing states to regulate these products "is inconsistent with the text, structure, and history of the CEA"; that the states' position would "reintroduce precisely the regulatory fragmentation Congress deliberately displaced" when it created the CFTC; and that the states' theory presents "a fundamental threat to Congress's statutory design" that would create "a seismic shift in the longstanding status quo between CFTC and state authority." *Id.* at 2.

## IV.   Defendants' Public Participation In Kalshi's Preemption Litigation.

In the nine months following the June 2025 meeting with Kalshi in which the parties agreed to provide each other notice before initiating any proceedings, Arizona said nothing to Kalshi to suggest that it was even considering an investigation, let alone bringing charges. In fact, Arizona said nothing to Kalshi *at all.* But ADG and the Attorney General began taking actions that nonetheless raised concerns.

On September 15, 2025, ADG sent a letter to Arizona-licensed "Event Wagering Operators," warning them against doing business with DCMs, including Kalshi. ADG threatened that an Arizona operator's decision to partner "directly or indirectly" with entities offering event contracts in Arizona without a license would affect ADG's

evaluation of "continued suitability for that person or entity to maintain a license." Porter Decl., Ex. 2, at 1-2. The upshot of this threat was that any licensee that partnered with Kalshi not just in Arizona, but in any state, was at risk of losing its Arizona license. *Id*.

In addition, Attorney General Mayes began signing and submitting amicus briefs in the appeals involving Kalshi, maintaining that Kalshi is violating state gambling laws by offering event contracts. *See generally* Br. of Amici Curiae, *KalshiEX LLC v. Flaherty*, No. 25-1922 (3d Cir. June 17, 2025), Dkt. No. 29; Br. of Amici Curiae, *KalshiEX LLC v. Martin*, No. 25-1892 (4th Cir. Dec. 22, 2025), Dkt. No. 41; Br. of Amici Curiae, *KalshiEX LLC v. Assad*, No. 25-7516 (9th Cir. Jan. 30, 2026), Dkt. No. 48.1. Those amicus briefs argue that states, not the CFTC, have the power to regulate Kalshi's event contracts.

## V. Defendants' Response to Kalshi's Federal Suit With Criminal Charges.

Arizona filed its most recent amicus brief on March 10, 2026, in a Ninth Circuit case consolidated with *Assad*. Br. of Amici Curiae, *N. Am. Derivatives Exch., Inc. v. Nevada*, No. 25-7187 (9th Cir. Mar. 10, 2026), Dkt. No. 76.1. The following day, on March 11, Kalshi's counsel contacted Defendants' representatives noting that, although Arizona previously "provided oral assurances it would not pursue an enforcement action against Kalshi without providing prior notice," Kalshi has "become concerned that Arizona may soon beg[i]n an enforcement action." Porter Decl., Ex. 3, at 1-2. Kalshi explained that it was "mindful to avoid burdening the courts with unnecessary litigation" and asked Defendants to forbear enforcement pending the outcome of the *Assad* appeal, given that the issues there "have direct application" to issues here. *Id.* at 2.

Kalshi received no response to its email. Accordingly, it filed this action in this Court on March 12, 2026, seeking relief against imminent state enforcement on the ground that the Supremacy Clause prohibits Defendants from enforcing preempted state laws.

Kalshi immediately provided the complaint to Defendants and noted that without assurances of nonenforcement, Kalshi would seek a "temporary restraining order, and a preliminary injunction, barring Defendants from enforcing preempted state laws against Kalshi." Porter Decl., Ex. 4, at 1. "To avoid burdening the Court and parties with

unnecessary motion practice," Kalshi asked Defendants to confirm whether they would "agree not to seek enforcement against Kalshi either while the newly-filed action is pending (avoiding the need for Kalshi to seek both a temporary restraining order and preliminary injunction), or while Kalshi's motion for a preliminary injunction is pending (avoiding the need for Kalshi to seek a temporary restraining order)." *Id*. at 1–2.  Again, Kalshi received no response.  Kalshi therefore filed a motion for a TRO and preliminary injunction on March 16, 2026, and immediately notified Defendants of the filing.  Dkt. No. 11.

Later that morning, this Court ordered a status conference on Kalshi's Motion to be held at 4:00 pm that day.  Dkt. No. 12.  Kalshi immediately notified Defendants of the status conference, but once again received no response.  Havemann Decl., Ex. 1.

At 4:01 pm, just minutes into the status conference, Kalshi received an email from Defendants stating that the Attorney General had filed criminal charges against Kalshi in state court earlier that day.  Moments later, Defendants informed the Court of the criminal charges.  *See* Havemann Decl., Ex. 2, Status Conf. Tr., at 7:25–8:4.  Despite the state's earlier agreement to provide notice to Kalshi of any enforcement proceeding, Kalshi received no notice that Kalshi was the subject of a criminal investigation, let alone that criminal charges would be brought against it.  Defense counsel then took the position that, given the newly filed state charges, instead of hearing the case, the Court should apply the *Younger* abstention doctrine.  Citing *Hicks v. Miranda*, 422 U.S. 332 (1975), counsel for Defendants maintained that abstention was required even though the state charges had been filed after Kalshi's federal preemption suit was already pending in this Court.

Kalshi subsequently learned that the Attorney General filed the information against Kalshi in the Arizona Superior Court for Maricopa County earlier that day.  Havemann Decl., Ex. 3.  The information charges Kalshi and its affiliate, Kalshi Trading LLC, with 20 misdemeanor counts of violating Arizona's gambling laws.  *Id.*  The information does not merely contend that Kalshi's sports-related contracts violate state law.  Instead, it contends that *all event contracts* violate state law.  Multiple counts accuse Kalshi of committing a crime by offering a contract related to elections, even though such contracts

SNELL  
& WILMER

are lawful under the CEA and cannot be prohibited even by the CFTC. *Cf. KalshiEX*, 2024 WL 4164694, at \*13 (Kalshi's contracts involve "elections, politics, Congress, and party control," but not "illegal or unlawful activity" or anything "bear[ing] any relation to any game—played for stakes or otherwise" and thus cannot be prohibited under the CEA).

The gravamen of the state charges is that each of the millions of transactions on Kalshi amount to a criminal act that can subject the company to criminal liability, even though these contracts are lawful under the exclusive federal regime to which Kalshi is subject. These charges mark the first time any state has brought criminal charges against Kalshi or any other federally regulated prediction market for offering contracts on a DCM. Moreover, the charges were filed just one month before the Ninth Circuit is set to hear argument on the question whether states have any authority to regulate Kalshi. And these charges were filed notwithstanding ADG's prior letter to the CFTC acknowledging that prediction markets like Kalshi "are under the regulatory oversight of the Commodity Futures Trading Commission." Porter Decl., Ex. 2, at 3.

Following the hearing, the Court ordered the parties to brief the question whether the Court should abstain from Kalshi's federal preemption case in light of the newly filed state-court criminal charges. Dkt. No. 15.

## ARGUMENT

### I. *Younger* Abstention Is Unwarranted.

*Younger* abstention is an "extraordinary and narrow exception," *Arevalo*, 882 F.3d at 765 (citation and internal quotation marks omitted), from federal courts' " 'virtually unflagging obligation' to exercise the jurisdiction vested in them by Congress." *Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716, 727 (9th Cir. 2017) (quoting *Colo. River*, 424 U.S. at 817). The exception is based on "principles of equity, comity, and federalism" that counsel against federal interference in "*pending*" state proceedings. *Steffel v. Thompson*, 415 U.S. 452, 462 (1974) (emphasis added) (citation omitted).

In the context of a criminal prosecution, a district court may only abstain under *Younger* "if (1) there are ongoing state judicial proceedings, (2) the proceedings implicate

important state interests, and (3) there is an adequate opportunity in the state proceedings to raise federal questions." *Gartrell Constr. Inc. v. Aubry*, 940 F.2d 437, 441 (9th Cir. 1991). These conditions are not met here.

A. State criminal proceedings were not "ongoing" when this case was filed.

Abstention is unwarranted because the state's criminal case was not "ongoing" when Kalshi filed its complaint. "When no state criminal proceeding is pending at the time the federal complaint is filed," abstention does not serve the "considerations of equity, comity, and federalism" undergirding *Younger* abstention. *Steffel*, 415 U.S. at 462.[2] It is undisputed that there was no state court proceeding when the federal action was filed. In fact, there was also was no meaningful investigation, no effort to reach an accommodation, and no notice whatsoever. Rather, in June 2025, Arizona agreed that it would give Kalshi notice before initiating any state proceedings, and Arizona then said nothing at all to Kalshi until one minute into the TRO conference in this case, when it served Kalshi with an hours-old criminal information.

That should be the end of it. *Younger* vindicates comity principles by ensuring federal courts do not needlessly intrude on pending state court proceedings. *Younger* does not give states a license to forum shop by filing criminal charges to thwart a pending federal suit. And Defendants' forum shopping is all the more egregious here because the state criminal charges seek to short circuit not just the federal proceedings before this Court, but also the pending Ninth Circuit appeal in *Assad*. In that case, the court of appeals will decide the same question presented here: whether a state intrudes on the CFTC's exclusive jurisdiction when it seeks to enforce its gambling laws against a company like Kalshi that runs a DCM on which event contracts are traded. Defendants' hastily cobbled together

---

[2] *See Vill. of Belle Terre v. Boraas*, 416 U.S. 1, 3 n.1 (1974) (*Younger* did not apply because "when this federal suit was initiated, no state case had been started" (citation modified)); *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014) ("[T]he date for determining whether *Younger* applies 'is the date the federal action is filed[.]'" (citation omitted)); *Beltran v. California*, 871 F.2d 777, 782 (9th Cir. 1988) (for purposes of *Younger* abstention, the pendency of state proceedings is determined "at the time the federal action was filed"); *Kitchens v. Bowen*, 825 F.2d 1337, 1341 (9th Cir. 1987) (noting that the question is not whether the state proceedings are still ongoing, but whether they were underway before initiation of the federal proceedings).

criminal charges are designed to force this case into state court before this Court or the Ninth Circuit can find such state proceedings preempted.

Because *Younger* requires ongoing state proceedings, and here there was only ongoing federal litigation, this Court should not abstain. At the status conference, however, Defendants cited *Hicks v. Miranda*, which held that, in some circumstances, abstention is appropriate if a state action is commenced after the federal suit, but "before any proceedings of substance on the merits have taken place in the federal court." *Nationwide Biweekly Admin.*, 873 F.3d at 728 (quoting *Hicks*, 422 U.S. at 349). But *Hicks* offers Defendants no support. As the Ninth Circuit has recognized, *Hicks* turns critically on the premise that "*Younger* should not require a race to the courthouse where the timing of the state and federal actions is *merely serendipitous*." *Adultworld Bookstore v. City of Fresno*, 758 F.2d 1348, 1350 (9th Cir. 1985) (emphasis added). Nothing about *Hicks* suggests that a state can deprive a federal court of jurisdiction by rushing to file an action in state court while the federal proceedings are underway and while closely related federal proceedings are pending in the federal court of appeals.

In fact, *Hicks* suggests the opposite. In *Hicks*, employees of an adult-film theater were criminally charged and convicted in state court under state obscenity laws. The theater itself, represented by the same counsel as the employees, appeared at the state-court hearing and was given the opportunity to participate. 422 U.S. at 335–36. The theater subsequently filed a federal lawsuit seeking an injunction on the ground that the state obscenity statute violated the First Amendment. One day later, the state brought criminal charges against the theater. Because the theater had "a substantial stake in" its employees' "state proceedings," those proceedings predated the federal suit, and the theater's "interests and those of [its] employees were intertwined[ ]," the Supreme Court concluded that abstention was appropriate. *Id.* at 348–349. And in this context, the Court held that it did not matter that the state charges against the theater had been filed one day after the federal suit because the state charges were nonetheless filed "before any proceedings of substance on the merits ha[d] taken place in the federal court." *Id.* at 349.

SNELL & WILMER

*Hicks* recognizes that a slight delay in the filing of a state suit should not interfere with the application of *Younger* when "the same comity considerations apply." *Id.* (citation modified). As the Ninth Circuit explained when discussing *Hicks*, "[t]he closeness of the relationship between the employees and the federal plaintiff, combined with representation by the same attorney and the federal plaintiff's attempt to intervene in the earlier-filed state criminal proceeding against its employees, convinced the court that *Younger* should not require a race to the courthouse where the timing of the state and federal actions is merely serendipitous." *Adultworld Bookstore*, 758 F.2d at 1350. But the logic of *Hicks* cuts in precisely the opposite direction here, where the timing of the state-court proceeding is not "merely serendipitous," *id.*, but was done intentionally to deprive this Court of jurisdiction, and where the relevant ongoing proceedings are proceeding in federal court—in the form of the pending Ninth Circuit appeal in *Assad*. In these circumstances, the comity principles at the heart of both *Younger* and *Hicks* counsel firmly against abstention.

Indeed, Kalshi is aware of no case abstaining in comparable circumstances. In the most analogous case Kalshi has identified, *Wal-Mart Stores, Inc. v. Rodriguez*, 236 F. Supp. 2d 200 (D.P.R. 2002), the court had no trouble rejecting the application of *Younger*. In that case, plaintiff Wal-Mart filed a federal suit and sought a TRO against Puerto Rico for due process violations under Section 1983. *Id.* at 203. The same day the complaint was filed, the court granted a short-term TRO. Later that day, Puerto Rico filed a state-court case against Wal-Mart and moved to dismiss the federal case on *Younger* grounds. *Id.* The district court declined to abstain—even though the federal-court case remained at the TRO stage, and even though the state-court case was filed a mere day after the federal-court case. The court recognized Puerto Rico's obvious forum-manipulation tactics, and noted that interpreting *Hicks* to permit such forum manipulation would "vest[ ] a district attorney with the power to choose the forum and the nature of the proceeding where federal constitutional claims will be litigated," creating "an expansive 'reverse removal power'" that would "in essence" give state officials "the instrumental framework to bring a plaintiff's federal constitutional claims to state court." *Id.* at 210 (citation omitted).

*Wal-Mart* highlights a fatal defect in Defendants' assertion that abstention is required whenever a state can rush criminal charges in the early days of a federal suit: Such a rule would allow states to put an end to federal suits to vindicate federal rights against state incursions. In *Ex parte Young*, the Supreme Court recognized that the defendant had a right to bring a federal challenge to the constitutionality of a state law *before* he could be criminally prosecuted under it. Yet if Defendants were correct, any time an *Ex parte Young* action is filed, the state may unsuit the plaintiff merely by speeding to state court to lodge a criminal information. That cannot be what the Supreme Court had in mind when it observed that "the availability of prospective relief of the sort awarded in *Ex parte Young* gives life to the Supremacy Clause." *Green v. Mansour*, 474 U.S. 64, 68 (1985).

B.  There is no "important state interest" in enforcing preempted laws.

*Younger* abstention is also inappropriate because the state proceedings here do not seek to vindicate an "important state interest." *Gartrell*, 940 F.2d at 441.

*First*, "[n]o significant state interest is served where the state law is preempted by federal law and that preemption is 'readily apparent.'" *Id.* (citation omitted). "In such a case, the state tribunal is acting beyond its authority and *Younger* abstention is not required." *Id.* The Ninth Circuit has applied this rule to decline to abstain where a state proceeding fell within an express preemption clause that signaled Congress's clear "interest in uniform regulation." *Champion Int'l Corp. v. Brown*, 731 F.2d 1406, 1408–09 (9th Cir. 1984). The Ninth Circuit has also declined to abstain where the federal agency "has clearly expressed its view" that the matter "falls under [its] jurisdiction." *Bud Antle, Inc. v. Barbosa*, 45 F.3d 1261, 1273 (9th Cir. 1994). And the Ninth Circuit has favorably cited an Eleventh Circuit decision declining to abstain "where Congress had provided for exclusive jurisdiction" to a federal authority. *Woodfeathers, Inc. v. Washington County*, 180 F.3d 1017, 1021–22 (9th Cir. 1999) (citing *Baggett v. Dep't of Pro. Regul.*, 717 F.2d 521, 523–524 (11th Cir. 1983)).

Preemption is "readily apparent" here for all of those reasons, and more. As explained in Kalshi's motion for a preliminary injunction, Dkt. No. 11, overwhelming

- 13 -

evidence establishes that Arizona gambling laws are preempted insofar as the state seeks to apply these laws to regulate trading on Kalshi. The CEA contains an express preemption clause that grants the CFTC "exclusive jurisdiction" over trading on DCMs like Kalshi, thereby "supersed[ing]" state laws. 7 U.S.C. § 2(a)(1)(A). Congress in creating the CFTC sought to "preempt the field." H.R. Rep. No. 93-1383, at 35. The entire purpose of creating the CFTC and granting it exclusive jurisdiction was to bring futures markets "under a *uniform* set of regulations." *Am. Agric. Movement, Inc. v. Bd. of Trade of Chi.*, 977 F.2d 1147, 1156 (7th Cir. 1992) (emphasis added). Courts have held with no difficulty for 50 years that "the CEA preempts the application of state law." *Leist v. Simplot*, 638 F.2d 283, 322 (2d Cir. 1980) (Friendly, J.).[3] The CFTC itself has emphasized that trading on Kalshi falls within its exclusive jurisdiction, noting that Kalshi's contracts fall "comfortably" within the CFTC's exclusive jurisdiction, and "[s]tates cannot invade the CFTC's exclusive jurisdiction" merely "by re-characterizing swaps trading on DCMs as illegal gambling." CFTC Br. at 2, 19. Letting them do so would require "redraw[ing] the statutory boundary Congress established." *Id.* at 28. That "is the job of Congress, not the Courts." *Id.* at 17. And even Arizona itself has conceded that "Kalshi" falls "under the regulatory oversight of the [CFTC]." Porter Decl., Ex. 2, at 3. That concession is fatal; where "the CFTC has jurisdiction, its power is exclusive." *Chi. Mercantile Exch. v. SEC*, 883 F.2d 537, 548 (7th Cir. 1989).

If Arizona gambling laws applied to Kalshi, they would also be conflict preempted for multiple reasons, as another federal court recently held regarding similar state laws. *See KalshiEX LLC v. Orgel*, No. 3:26-cv-00034, 2026 WL 474869, at *9–10 (M.D. Tenn. Feb. 19, 2026). The application of state law to "directly affect trading on or the operation of a futures market" stands " 'as an obstacle to the accomplishment and execution of the

---

[3] *See United States v. Brien,* 617 F.2d 299, 310 (1st Cir. 1980) ("Congress intended the CFTC to occupy the entire field of commodities futures regulation."); *Rasmussen v. Thomson & McKinnon Auchincloss Kohlmeyer, Inc.*, 608 F.2d 175, 178 (5th Cir. 1979) (state-law "commercial gambling" claim could not proceed because "the Commodity Exchange Act preempts all state laws inconsistent with its provisions"); *FTC v. Ken Roberts Co.*, 276 F.3d 583, 590–91 (D.C. Cir. 2001) (the CFTC's jurisdiction is "exclusive with regard to the trading of futures *on organized contract markets* " (citation omitted)).

full purposes and objectives of Congress,' and hence is preempted." *Am. Agric.*, 977 F.2d at 1156–57 (citation omitted). Subjecting Kalshi to a criminal prosecution for offering trades on a federally regulated exchange would unquestionably "directly affect" trading on DCMs. *Id.* (citation and quotation marks omitted). Allowing Arizona to criminalize Kalshi's event contracts would, moreover, subject Kalshi to criminal penalties for offering trades that the *comprehensive federal scheme permits*, *see* 7 U.S.C. §§ 1, *et seq.*; *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 356 (1982)—another clear conflict. And compliance with both Arizona gambling laws and federal law would be impossible, because state law would require Kalshi to limit trades only to persons "within the State," Ariz. Admin. Code § R19-4-102, while federal law requires Kalshi to provide "*impartial access* to its markets and services," 17 C.F.R. § 38.151(b) (emphasis added). As the CFTC recently explained, compliance with state-specific prohibitions on contracts is an "impossibility" for DCMs, because these prohibitions conflict with the "federal mandate to provide impartial national access." CFTC Br. at 26–27.

While some federal courts have declined to find preemption in similar litigation at the preliminary-injunction stage, these courts reached their decisions on the now-disproven view that the CFTC did not understand itself to possess jurisdiction over Kalshi's contracts. *See KalshiEX, LLC v. Hendrick*, No. 2:25-cv-00575, 2025 WL 3286282, at *9 n.7 (D. Nev. Nov. 24, 2025) (ruling on the mistaken belief that prior CFTC statements "express its view on its own expertise (or lack thereof) in this area"); *KalshiEX, LLC v. Schuler*, No. 2:25-cv-1165, 2026 WL 657004, at *9 (S.D. Ohio Mar. 9, 2026) (ruling on the mistaken belief that there is no basis to conclude "the CFTC would view geographic restrictions predicated on compliance with state law" as impermissible); *KalshiEX LLC v. Martin*, 793 F. Supp. 3d 667, 686 (D. Md. 2025) (similar). Because the CFTC has now forcefully asserted its exclusive jurisdiction over Kalshi, these cases do not undermine the conclusion that state laws are plainly preempted.

*Second*, the absence of a significant state interest in Kalshi's prosecution is reinforced by the very state laws Defendants have invoked in their prosecution. The

Arizona gambling laws under which the state seeks to prosecute Kalshi exempt from the definition of "[g]ambling" and "wager" all "bona fide business transactions," including "contracts for the purchase or sale at a future date of securities *or commodities*." A.R.S. § 13-3301(6) (emphasis added). The state has therefore made a sovereign choice to exclude commodities trading from the scope of its gambling prohibitions. And the question whether a contract is a transaction in "commodities" is, of course, a *federal* question governed by the CEA, not state law. The CEA, in turn, clearly and unquestionably describes "event contracts" like Kalshi's as federally regulated "agreements, contracts, transactions, or swaps in *excluded commodities*." 7 U.S.C. § 7a-2(c)(5)(C)(i) (emphasis added); *see id.* § 1a(19) ("excluded commodity" is a term of art for certain intangible commodities). Having conceded it has no role in the regulation of commodities contracts, Arizona is not entitled to demand a federal court abstain from considering that issue.

*Third*, whatever remains of the state's interest in its eleventh-hour state-court prosecution of Kalshi is diminished still further by the CFTC's own interest in this case. The justification for *Younger* "lacks force where the United States is a litigant." *Morros*, 268 F.3d at 707. As the Ninth Circuit has recognized, "it is impossible to avoid federal-state conflict when the United States is a party," and in those circumstances "the choice of forum must be influenced by the fact that the federal government is asserting its rights against a state and has a great interest in having the federal court conduct the preemption analysis." *Id.* at 708–709. As of this filing, the CFTC has not participated in this case—which is hardly surprising given how quickly the case has developed. But the CFTC has participated in closely-related Ninth Circuit proceedings in *Assad*, emphasizing that state attempts to regulate prediction markets like Kalshi "present a fundamental threat to Congress's statutory design," that the arguments for state regulation represent "a seismic shift in the longstanding status quo between CFTC and state authority," and that these state efforts lack "any limiting principle" and "have upended decades of well-settled and Congressionally-mandated exclusive jurisdiction across the full spectrum of event contracts." CFTC Br. at 2–3. Thus, it is "impossible to avoid federal-state conflict" in this

- 16 -

case, making this Court the more appropriate forum. *Morros*, 268 F.3d at 708.

C.   "Bad faith" and "unusual circumstances" are present here.

Even if the *Younger* factors were met—and they are not—abstention would still not be warranted. *Younger* abstention is inappropriate in cases involving "bad faith" or other "unusual circumstance[s]" leading to "irreparable injury." *Younger*, 401 U.S. at 53–54.

Here, the state's criminal prosecution of Kalshi is being pursued in "bad faith." *Id.* The hallmark of bad faith—that Defendant Mayes brought charges "without a reasonable expectation of obtaining a valid conviction," *Stockton v. Brown*, 152 F.4th 1124, 1138 (9th Cir. 2025) (citation and internal quotation marks omitted)—is present. The charges filed against Kalshi arise from conduct the Arizona legislature has expressly exempted from Arizona's state gambling laws, namely, transactions involving commodities contracts. Not to mention that the question of preemption is *currently on appeal* to the Ninth Circuit in *Assad*, set to be argued on April 16, and the Ninth Circuit's answer to the preemption question would be binding on Arizona. And the record makes clear that the state filed criminal charges to deprive Kalshi of a federal forum for its claims. *See* pp. 7–9, *supra*.

A court also need not abstain where there are "unusual circumstance[s]" leading to "irreparable injury." *Younger*, 401 U.S. at 53–54. Such circumstances exist here, where a DCM, operating under exclusive federal jurisdiction, has now been tarred by criminal charges even though it has operated its business in full compliance with the federal law to which it is subject. These charges do not present a one-time threat. Rather, every single trade on Kalshi's platform in Arizona is potentially subject to a criminal charge. Millions of trades are made on Kalshi's platform every day, many in Arizona. If the criminal proceedings proceed, there would be little to stop the Attorney General from manufacturing additional charges that would render Kalshi's continued operation impossible. The entire purpose of *Ex parte Young* is to avoid placing parties in precisely this untenable situation. *See Ex parte* Young, 209 U.S. at 165. This Court should decline to abstain.

## **CONCLUSION**

For the foregoing reasons, the Court should decline to abstain.

- 17 -

DATED: March 20, 2026

Respectfully submitted,

**SNELL & WILMER L.L.P.**

*s/Adam E. Lang*
Adam E. Lang (#022545)
Matt Jarvey (#031350)
Derek C. Flint (#034392)
Taryn J. Gallup (#035002)

and

Neal Katyal (*pro hac vice* forthcoming)
Joshua B. Sterling (*pro hac vice* forthcoming)
Colleen E. Roh Sinzdak (*pro hac vice* forthcoming)
William E. Havemann (*pro hac vice* pending)
**MILBANK LLP**
1101 New York Avenue NW
Washington, DC 20005
Telephone: 202-835-7500
Facsimile: 202-263-7586

Grant R. Mainland (*pro hac vice* pending)
Andrew L. Porter (admitted *pro hac vice*)
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
Telephone: 212-530-5000
Facsimile: 212-530-5219
*Attorneys for Plaintiff KalshiEX LLC*

- 18 -