Adam E. Lang (#022545)
Matt Jarvey (#031350)
Derek C. Flint (#034392)
Taryn J. Gallup (#035002)
SNELL & WILMER LLP
One East Washington Street
Suite 2700
Phoenix, Arizona 85004-2556
Telephone:   602.382.6000
Facsimile:   602.382.6070
Email: alang@swlaw.com
       mjarvey@swlaw.com
       dflint@swlaw.com
       tgallup@swlaw.com

Neal Katyal (*pro hac vice*)
Joshua B. Sterling (*pro hac vice*)
Colleen E. Roh Sinzdak (*pro hac vice*)
William E. Havemann (*pro hac vice*)
**MILBANK LLP**
1101 New York Avenue NW
Washington, DC 20005
Telephone: 202-835-7500
Facsimile: 202-263-7586
Email: nkatyal@milbank.com
       jsterling@milbank.com
       crohsinzdak@milbank.com
       whavemann@milbank.com

Grant R. Mainland (*pro hac vice*)
Andrew L. Porter (*pro hac vice*)
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
Telephone: 212-530-5000
Facsimile: 212-530-5219
Email: gmainland@milbank.com
       aporter@milbank.com

*Attorneys for Plaintiff*
*KalshiEX LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| KalshiEX LLC, | No. CV-26-01715-PHX-MTL |
| Plaintiff, | **PLAINTIFF'S REPLY TO ORDER TO SHOW CAUSE** |
| v. | |
| Jackie Johnson, in her official capacity as Director of the Arizona Department of Gaming; Douglas Jensen, in his official capacity as Chief Law Enforcement Officer of the Arizona Department of Gaming; Arizona Department of Gaming; and Kristin K. Mayes, in her official capacity as Attorney General for the State of Arizona, | |
| Defendants. | |

4924-0489-9485

### **INTRODUCTION**

Defendants' request for *Younger* abstention asks this Court to reward the type of conduct the doctrine was designed to prevent.  Rather than allow the earlier-filed federal litigation to proceed, Defendants admittedly cut short their own investigation into Kalshi and rushed to file criminal charges within hours of Kalshi's preliminary injunction motion—manufacturing a state-court proceeding for the transparent purpose of divesting this Court of jurisdiction.  Indeed, Defendants do not dispute that they rushed to bring these charges for the purpose of divesting this Court of jurisdiction.  *Younger* cannot require this Court to abstain in the face of such gamesmanship.  To hold otherwise would render *Ex parte Young* a dead letter—any state official could defeat a pending suit to enforce federal rights in federal court by scrambling to file state-court charges before the federal court acts.  That is not what the "principles of equity, comity, and federalism" demand.  *See Steffel v. Thompson*, 415 U.S. 452, 462 (1974).

Nor does *Younger* abstention apply in the absence of an important state interest— and there is none here.  Arizona's own legislature excluded from its gambling prohibitions "contracts for the purchase or sale at a future date of securities or commodities."  A.R.S. § 13-3301(6).  The event contracts Kalshi offers on its designated contract market ("DCM") fall squarely within that exclusion—and squarely within the exclusive jurisdiction Congress granted to the Commodity Futures Trading Commission ("CFTC").  The CFTC itself has confirmed as much, stating that Kalshi's contracts fall "comfortably" within its exclusive jurisdiction and that states "cannot invade" that jurisdiction "by re-characterizing swaps trading on DCMs as illegal gambling."  CFTC Amicus Br. at 2, 19, *N. Am. Derivatives Exch., Inc. v. Nevada*, No. 25-7187 (9th Cir. Feb. 17, 2026), Dkt. No. 38.2 ("CFTC Br.").  The absence of any "important state interest" independently disposes of Arizona's abstention request.

But there is more.  Defendants' conduct bears the hallmarks of bad faith.  Pursuing a criminal case without hope of obtaining a conviction is a classic form of bad faith, yet Defendants do not seriously grapple with the facial inapplicability of Arizona's gambling

- 1 -

4924-0489-9485

statutes to Kalshi's federally regulated conduct—because they cannot. Equally troubling is Defendants' intentionally timed state-court prosecution, which was plainly designed to thwart Kalshi's right to vindicate its federal rights in a federal forum and to short circuit the Ninth Circuit's impending decision on the preemption question at the heart of this case. *See* Notice of Oral Argument, *KalshiEX, LLC v. Assad*, No. 25-7516 (9th Cir. Mar. 3, 2026), Dkt. No. 93. Courts routinely condemn this type of jurisdictional gamesmanship. This Court should follow suit and decline to abstain.

## ARGUMENT

### A.   Defendants' theory of "ongoing state proceedings" is unsupported and would upend critical access to federal forums.

*Younger* abstention typically applies where a plaintiff files a federal suit when state-court proceedings are already pending. Here, Arizona did not file its criminal information against Kalshi until four (4) days after the federal complaint was filed. Indeed, until that information was filed, Kalshi was not even aware that it was the subject of a criminal investigation. Defendants do not dispute that. Instead, they rely on Supreme Court decisions recognizing that, in some instances, declining federal jurisdiction in favor of a later-filed state-court case upholds the principles of *Younger*. But the Ninth Circuit has made clear that *Younger* abstention is appropriate in such circumstances when "the timing of the state and federal actions is *merely serendipitous*." *Adultworld Bookstore v. City of Fresno*, 758 F.2d 1348, 1350 (9th Cir. 1985) (emphasis added); *see also* Plaintiff's Resp. to Order to Show Cause at 11–12, Dkt. No. 17 ("Pl.'s Resp.").

There was no serendipity here. This is not a case where a state brought criminal charges in the ordinary course, and those charges happened to be filed shortly after the initiation of a federal suit. To the contrary, Defendants admit (at 15) that their criminal investigation was still ongoing when they rushed into court to file their criminal information—conspicuously describing the investigation as "towards the end," not over. Nor is there any mystery as to why Defendants did not wait to finish their own

4924-0489-9485

investigation; they filed their information just hours after Kalshi sought a preliminary injunction, with the clear intent of depriving Kalshi of a federal forum.

Nothing in *Younger* or its progeny supports abstention in circumstances like these, where a state initiates state proceedings merely to prevent a federal court from exercising jurisdiction over a federal suit.   To the contrary, while *Younger* grounded itself in "Our Federalism," it recognized that this federalism is not a one-way street; it requires "sensitivity to the legitimate interests of both State and National Governments." *Younger v. Harris*, 401 U.S. 37, 44 (1971).  And *Steffel* held that the "principles of equity, comity, and federalism" underlying *Younger* generally are not served when there is no state action pending when the federal suit is filed.  415 U.S. at 462.

Defendants err in asserting that *Hicks v. Miranda*, 422 U.S. 332 (1975), and *Doran v. Salem Inn, Inc.*, 422 U.S. 922 (1975), authorize a state to unseat a federal court by rushing to file criminal charges.  As Kalshi's response brief to the Court's Order to Show Cause explained, *Hicks* held that a federal court should abstain in favor of a later-filed state prosecution in circumstances where the federal *plaintiff* had already participated in closely related state proceedings.  *See* Pl.'s Resp. at 11–12.  That is obviously not the case here because there were *no* related state proceedings pending when Kalshi (the federal plaintiff here) filed suit; indeed, the most directly related proceedings were federal—in the form of the pending Ninth Circuit appeal in *Assad*.

*Doran* is similarly inapt.  It involved a plaintiff who, along with two other bars, sought to challenge the constitutionality of a local ordinance banning topless dancing. 422 U.S. at 924–25.  The plaintiff there had temporarily suspended topless dancing at its bar before filing suit but restarted the practice immediately after the federal court declined to issue a temporary restraining order.  *Id.*  Local law enforcement issued a criminal summons on each of the three days the topless dancing occurred.  *Id.*  Unlike here, those criminal summonses were not issued to defeat federal jurisdiction, and they were filed on the same day the bar resumed activity on the assertedly prohibited conduct.  That is nothing like this case, where Kalshi has been offering the disputed event contracts in Arizona for

- 3 -

4924-0489-9485

well over a year, and where Defendants sent Kalshi a cease-and-desist letter 10 months ago, and yet the state did not file charges against Kalshi until minutes before this Court commenced its TRO hearing.  The *Doran* Court did not address this sort of manipulative conduct, but instead considered whether it was appropriate for the federal court to abstain in favor of the criminal proceedings, even as it permitted the related federal suit regarding the conduct of the two other bars to go forward because no criminal charges were pending against those plaintiffs, which had not restarted topless dancing.  *Id.* 927–31. *Doran* therefore makes clear that abstention should be decided on a case-by-case basis, with each plaintiff "placed in the position required by our cases as if that [plaintiff] stood alone." *Id.* at 929.

That holding offers no support for Defendants' assertion that *Younger* abstention applies where a state rushes to file criminal charges with the obvious intent of preventing the federal court from considering the federal question before it.  That is hardly surprising because Defendants' position would eviscerate *Ex parte Young*'s assurance that a federal forum is available to protect litigants from state prosecutions violating federal rights.  *Ex parte Young*, 209 U.S. 123, 165 (1908).  If Defendants were correct, a state could always block a plaintiff's access to a federal court by cobbling together a criminal information after the federal complaint is filed.  *See* Pl.'s Resp. at 13; *see also For Your Eyes Alone, Inc. v. City of Columbus*, 281 F.3d 1209, 1219 (11th Cir. 2002) (noting the risk of giving state prosecutors a "reverse removal power" and thus remaining "circumspect about interpreting *Hicks* in a manner that gives state officials expansive leeway to override a plaintiff's choice of whether to litigate in a federal or state forum" (citation modified)).  Defendants identify no case, decided by any court, permitting what they attempt here.

**B.  The absence of an "important state interest" disposes of Arizona's request for abstention.**

*Younger* abstention applies only in the face of an "important state interest." *Gartrell Constr. Inc. v. Aubry*, 940 F.2d 437, 441 (9th Cir. 1991).  Here, there is none.  Arizona's own gambling laws make clear that commodities trading is a federal matter, and they could

- 4 -

hardly do otherwise because federal law grants the CFTC exclusive jurisdiction over commodities transactions on exchanges. The CFTC has made clear that Kalshi's transactions fall comfortably within this exclusive jurisdiction, putting paid to any suggestion that abstention in favor of state interests is required here. Defendants' arguments to the contrary lack merit.

Defendants assert (at 7) that a state's interest in enforcing its criminal laws always satisfies the requirement of an "important state interest." But here, the state's criminal laws do not cover Kalshi's conduct. Arizona's legislature has made the sovereign decision to exclude commodities trading from the scope of its gambling prohibitions. A.R.S. § 13-3301(6) (exempting all "bona fide business transactions," including "contracts for the purchase or sale at a future date of securities *or commodities*" from the definition of "[g]ambling" and "wager" (emphasis added)). And whether a contract is a transaction in commodities is a question governed by the Commodities Exchange Act ("CEA"), not state law. *See* Pl.'s Resp. at 15–16.

Defendants do not dispute any of this, but they urge this Court to ignore it—suggesting (at 15) that a "contested defense" is not relevant because the merits of the criminal charges are not properly before this Court. But the fact that Arizona law exempts the very conduct at issue here is highly relevant to the question of whether Defendants' effort to prosecute that conduct implicates an "important state interest." *Gartrell*, 940 F.2d at 441. Because the event contracts on Kalshi are beyond the scope of state regulation, the criminal proceedings do not implicate *any* state interest, let alone an important one.

Even if the Court were to set aside the Arizona legislature's determination of where state interests lie, Congress has expressly granted "exclusive jurisdiction" to regulate these transactions to the CFTC. 7 U.S.C. § 2(a)(1)(A). Congress has preempted any state interest that might exist in regulating transactions on DCMs. *See id.* ("supersed[ing]" the "regulatory authorities" of "any State"); *Gartrell*, 940 F.2d at 441 ("No significant state interest is served where the state law is preempted by federal law and that preemption is 'readily apparent.'"). It designed a federal framework to "[b]ring[ ] all futures trading

- 5 -

4924-0489-9485

under federal regulation." *Commodity Futures Trading Commission Act: Hearings Before the S. Comm. on Agric. & Forestry on S. 2485, S. 2578, S. 2837, and H.R. 13113*, 93d Cong., 2d Sess. 848 (1974) (hereafter "Senate Hearings").

Defendants acknowledge (as they must) that federal preemption and exclusive federal jurisdiction prevent the application of *Younger* abstention—recognizing (at 9–10) that courts have declined to abstain in the face of ERISA's preemptive force and the NLRB's exclusive jurisdiction. But Defendants attempt to distinguish those cases on the ground that preemption and exclusive jurisdiction under the CEA are somehow less clear or dispositive. That ignores not only the plain text of the CEA, but also the extensive legislative history and case law indicating that the entire purpose of Congress's amendments to the CEA in 1974 and the creation of the CFTC was to bring futures markets "under a uniform set of regulations." *Am. Agric. Movement, Inc. v. Bd. of Trade of Chi.*, 977 F.2d 1147, 1156 (7th Cir. 1992); *see also* Pl.'s Resp. at 13–14.

Start with the text. The 1974 amendments to the CEA could not be clearer in granting "exclusive jurisdiction" over all "accounts," "agreements," and "transactions involving swaps or contracts of sale of a commodity for future delivery" that are "traded or executed on a contract market designated" to the CFTC. 7 U.S.C. § 2(a)(1)(A). The "plain meaning of 'exclusive'" "necessarily denies jurisdiction" to other entities. *Mississippi v. Louisiana*, 506 U.S. 73, 77–78 (1992). Through these 1974 amendments, Congress "aim[ed]" to "avoid unnecessary, overlapping and duplicative regulation." *FTC v. Ken Roberts Co.*, 276 F.3d 583, 588 (D.C. Cir. 2001) (citation modified). As one sponsor of the amendments explained, "different State laws would just lead to total chaos." Senate Hearings at 685 (statement of Sen. Clark). And in the course of finalizing the 1974 amendments, to "assure that Federal preemption is complete," the Senate deleted the provision the Supreme Court had previously interpreted to preserve the states' authority over futures trading. 120 Cong. Rec. 30,464 (1974) (statement of Sen. Curtis); *see also Rice v. Bd. of Trade of Chi.*, 331 U.S. 247, 255 (1947). Ultimately, the CEA establishes "a comprehensive regulatory structure to oversee the volatile and esoteric futures trading

4924-0489-9485

complex," *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 356 (1982) (quoting H.R. Rep. No. 93-975, at 1 (1974)), providing further evidence that Congress sought to foreclose concurrent state jurisdiction.

The CEA's preemptive effect is therefore as "readily apparent" as it is in the ERISA and NLRB contexts. *See also* Pl.'s Resp. at 13–15. And the event contracts Kalshi offers on its DCM fit comfortably within the CEA's comprehensive and exclusive framework. Kalshi's event contracts, whether for sports events, elections, or any other category, are swaps under the plain language of the CEA, as they "provide[]" for payment based on the "occurrence, nonoccurrence, or the extent of the occurrence of an event or contingency associated with a potential financial, economic, or commercial consequence." 7 U.S.C. § 1a(47)(A)(ii). Kalshi's contracts are also futures or options in "excluded commodit[ies]." Excluded commodities include intangibles such as commercial benchmarks. *See* 7 U.S.C. § 1a(19). Congress also expressly defined "excluded commodity" to include "occurrence[s]" that are "associated with a financial, commercial, or economic consequence." *Id.* § 1a(19)(iv).

Further, the CFTC has expressly and forcefully recognized its exclusive jurisdiction over Kalshi in an amicus brief it submitted in the related proceedings currently pending before the Ninth Circuit. There, the CFTC explained that Kalshi's event contracts fall "comfortably" within the CFTC's exclusive jurisdiction, and "[s]tates cannot invade the CFTC's exclusive jurisdiction" merely "by re-characterizing swaps trading on DCMs as illegal gambling." CFTC Br. at 2, 19.

Defendants ask this Court to discount the CFTC's assertion of exclusive jurisdiction over Kalshi, implying (at 11) that the CFTC has changed its position on preemption. They are mistaken. The agency has consistently held that states are preempted from regulating DCMs. *See* Brief for Appellant at, *KalshiEX LLC v. CFTC*, 119 F.4th 58 (D.C. Cir. 2024) (No. 24-5205), 2024 WL 4512583, at *27 ("*due to federal preemption*, event contracts *never violate state law* when they are traded on a DCM" (emphases added)). Defendants also suggest (at 10) that the agency's views are irrelevant because the Supreme Court did

- 7 -

4924-0489-9485

away with *Chevron* deference. But even absent *Chevron*, courts may account for an agency's "body of experience and informed judgment" in interpreting a statute. *Loper Bright Enters. v. Raimondo,* 603 U.S. 369, 402 (2024) (citation and quotation marks omitted).

Even more to the point, the CFTC's assertion of jurisdiction undercuts the rationale for applying *Younger* abstention. In *United States v. Morros*, 268 F.3d 695, 707–08 (9th Cir. 2001), the court recognized that the justification for *Younger* abstention "lacks force" where "it is impossible to avoid federal-state conflict." A federal-state conflict undeniably already exists here in light of the CFTC's unequivocal position that it has exclusive jurisdiction over Kalshi. Defendants insist (at 14) that *Morros* does not apply because the CFTC is not a party to *this* case and is instead participating in the related Ninth Circuit proceedings in *Assad*, but they do not explain how that mitigates the obvious state-federal conflict. As the CFTC emphatically stated in its Amicus Brief, state regulation, like that which Arizona attempts here, "present[s] a fundamental threat to Congress's statutory design." CFTC Br. at 2. The concerns animating *Morros* thus apply with full force.

**C.   The Court should decline to abstain in light of the bad faith and other unusual circumstances requiring federal intervention.**

Even if the Court determines that the threshold requirements for *Younger* abstention are present here (they are not), the Court should decline to abstain because this case presents the sort of "bad faith" and "other unusual circumstance that . . . call for equitable relief" from a federal court. *Younger*, 401 U.S. at 54.

Defendants cannot credibly maintain that its prosecution of a commodities exchange for gambling is likely to result in a criminal conviction. Defendants do not show how Kalshi's conduct is subject to Arizona's gambling laws where Arizona's own statute exempts "bona fide business transactions," "including contracts for the purchase or sale at a future date of securities or commodities," like those on Kalshi's DCM, from the definition of "[g]ambling" or "wager[ing]." A.R.S. § 13-3301(6). Thus, on the face of Arizona's

SNELL & WILMER

4924-0489-9485

statutory framework governing gambling within the state, Kalshi, a commodities exchange, is not considered to offer gambling or wagering.  Pl.'s Resp. at 17.

Instead, Defendants seek to dispute Kalshi's account of a June 2025 meeting where the parties discussed providing advance notice before bringing suit.  The parties obviously have different recollections of that meeting, but there is no need for this Court to referee that debate because Defendants do not dispute the key point:  Once Kalshi filed suit, Defendants rushed to bring criminal charges with the intent of depriving this Court of jurisdiction—cutting short their own criminal investigation and filing a criminal information just hours after Kalshi requested a preliminary injunction.

This transparent effort to deprive Kalshi of its federal forum readily establishes the "bad faith" and "unusual circumstance[s]" that prevent the application of *Younger* abstention.  *Younger*, 401 U.S. at 54.   That is clear from the Ninth Circuit's decision in *Page v. King*, 932 F.3d 898, 902 (9th Cir. 2019), which recognized that "*Younger*'s exceptions for bad faith, harassment, or other extraordinary circumstances" protect a plaintiff against the threat that a "state court could *intentionally* delay proceedings to stave off federal" review (emphasis added).  *Page* in turn cited *San Jose Silicon Valley Chamber of Commerce Political Action Committee. v. City of San Jose*, 546 F.3d 1087, 1093 (9th Cir. 2008), *abrogated on other grounds by Sprint Commc'ns*, 571 U.S. 69 (2013), which explained that it would qualify as bad faith for *Younger* purposes if a state administrative agency were to "*intentionally* delay completion of a proceeding so as to thwart state-court and federal-court review" (emphasis added).  The upshot of these decisions is clear:  Where a state's conduct reflects an intent to impede federal jurisdiction, *Younger* abstention does not apply.

Indeed, federal courts routinely condemn analogous efforts to manipulate federal jurisdiction.  *See, e.g.*, *Am. States Ins. Co. v. Dastar Corp.*, 318 F.3d 881, 885 (9th Cir. 2003) (holding that "[a] party may not engage in manipulation either to create appellate jurisdiction or prevent it"); *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001) ("an attempt to influence or manipulate proceedings in one case in order to gain tactical advantage in

- 9 -

another case" constitutes conduct with an "improper purpose"); *Heller v. Am. States Ins. Co.*, 2016 WL 1170891, at *3 (C.D. Cal. Mar. 25, 2016) (finding bad faith "where the plaintiff engaged in strategic gamesmanship to prevent a defendant's removal from state court" (citation modified)); *Erum v. Cnty. of Kauai*, 2008 WL 2598138, at *4 (D. Haw. June 30, 2008) (plaintiff "engaged in bad faith conduct" where it asserted frivolous claims "solely to manufacture subject matter jurisdiction"). The same result is warranted here.

Moreover, abstaining here would be particularly inequitable because it would likely result in the outright dismissal of Kalshi's federal claims. Although Courts typically have considerable discretion to stay a case, *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 721 (1996), the Ninth Circuit has held that if the Court decides "the *Younger* doctrine applies, the case must be dismissed." *H.C. ex rel. Gordon v. Koppel*, 203 F.3d 610, 613 (9th Cir. 2000); *Gilbertson v. Albright*, 381 F.3d 965, 981 (9th Cir. 2004) (same). Kalshi will therefore lose its federal forum for vindicating its preemption rights and will be relegated to defending itself in a state criminal prosecution that Arizona brought for the specific purpose of defeating this federal action.

That result is inconsistent with the purposes of both *Younger* and *Ex parte Young*. *Younger* abstention reflects an equitable doctrine rooted in comity; it was never intended to serve as a mechanism by which a state can extinguish a plaintiff's federal claims through strategically timed state-court charges. And *Ex parte Young* exists precisely to ensure that litigants are not forced to endure criminal prosecution under preempted state laws as the price of vindicating their federal rights.

## CONCLUSION

For the foregoing reasons, the Court should decline to abstain.

- 10 -

DATED: April 1, 2026

Respectfully submitted,

**SNELL & WILMER L.L.P.**


*/s/ Adam E. Lang*
Adam E. Lang (#022545)
Matt Jarvey (#031350)
Derek C. Flint (#034392)
Taryn J. Gallup (#035002)

and

Neal Katyal (*pro hac vice*)
Joshua B. Sterling (*pro hac vice*)
Colleen E. Roh Sinzdak (*pro hac vice*)
William E. Havemann (*pro hac vice*)
**MILBANK LLP**
1101 New York Avenue NW
Washington, DC 20005
Telephone: 202-835-7500
Facsimile: 202-263-7586

Grant R. Mainland (*pro hac vice*)
Andrew L. Porter (*pro hac vice*)
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
Telephone: 212-530-5000
Facsimile: 212-530-5219
*Attorneys for Plaintiff KalshiEX LLC*

- 11 -

4924-0489-9485