**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| KalshiEX LLC, et al., | No. CV-26-01715-PHX-MTL |
| Plaintiffs, | **ORDER** |
| v. | |
| Jackie Johnson, et al., | |
| Defendants. | |

Technology often sprints faster than the law can keep pace. Tapping on a smartphone to trade on the outcome of real-world events is a recent innovation. Now, existing state regulatory structures meet new markets they never contemplated. This case asks whether the Commodity Exchange Act protects modern prediction markets or if they are unlawful under Arizona's gambling laws. Before the Court can answer that question, it must address certain threshold issues concerning the limits of federal judicial power over state court proceedings.

## I. BACKGROUND

### A. Events Giving Rise to this Action

Plaintiff KalshiEX LLC ("Kalshi") operates an online prediction market where users can buy and sell "event contracts" based on the outcome of future events, such as elections and sporting events. (Doc. 1 ¶ 23.) In 2020, Kalshi registered as a designated contract market ("DCM") with the Commodity Futures Trading Commission ("CFTC") under the Commodity Exchange Act ("CEA"). (*Id.* ¶ 54.)

Arizona is one of several states that have sought enforcement against Kalshi for purported violations of state gambling laws. The Arizona Attorney General and Department of Gaming ("Department") began investigating Kalshi in early 2025. (Doc. 20 at 2.) In May 2025, the Department sent a cease-and-desist letter to Kalshi, "requir[ing] that Kalshi cease gambling operations in Arizona." (Doc. 1-2 at 2-3.) The Department also sent a letter to the CFTC, stating that DCMs' offering of certain contracts in Arizona "amounts to illegal gambling in Arizona." (Doc. 11-2 at 9.) The letter criticizes "[t]he CFTC's inaction in enforcing its own rules." (*Id.* at 12.)

Counsel for Kalshi and the Department met on June 10, 2025. (Doc. 20 at 3.) What happened is disputed. Kalshi asserts that "Kalshi and the Arizona Attorney General's Office agreed that neither party would bring judicial proceedings against the other without providing advance notice." (Doc. 17 at 3.) The Department stated that it could provide advance notice to Kalshi of any forthcoming enforcement action, so long as Kalshi agreed to provide advance notice before filing a preemptive suit. (*Id.* at 6.) State officials deny Kalshi's account and claim that the parties discussed the length of any potential notice period, without reaching an agreement. (Doc. 20 at 3.)

State officials continued their investigation, including an investigator placing bets on the platform between December 2025 and February 2026.

On March 11, 2026, Kalshi emailed the Department threatening suit against Arizona state officials absent an agreement by noon the next day "not to initiate an enforcement proceeding against Kalshi until after the Ninth Circuit issues a final decision in the pending appeals." (Doc. 11-2 at 16.) The Department did not respond, so Kalshi filed suit. (Doc. 1.)

Kalshi's suit against Arizona state officials is one of many preemptive actions brought against several states, seeking to enjoin them from enforcing their gambling laws on the basis that the CFTC has exclusive regulatory jurisdiction over Kalshi. *See, e.g.*, *KalshiEX, LLC v. Hendrick*, No. 2:25-cv-00575 (D. Nev. Mar. 28, 2025); *KalshiEX LLC v. Martin*, No. 1:25-cv-01283 (D. Md. Apr. 21, 2025). Some federal courts have granted the requested injunctive relief; other courts have not. *Compare KalshiEX LLC v. Orgel*,

No. 3:26-cv-00034, 2026 WL 474869 (M.D. Tenn. Feb. 19, 2026), *with KalshiEX LLC v. Schuler*, No. 2:25-cv-01165, 2026 WL 657004 (S.D. Ohio Mar. 9, 2026).

On April 6, 2026, the Third Circuit held Kalshi is entitled to a preliminary injunction because the CEA preempts state gambling laws, as applied to Kalshi. *KalshiEX LLC v. Flaherty*, — F.4th —, 2026 WL 924004 (3d Cir. Apr. 6, 2026). Thus far, the Third Circuit is the only federal appellate court to rule on the issue. Pending on appeal at the Ninth Circuit is *KalshiEX LLC v. Assad*, No. 25-7516 (9th Cir.). In *Assad*, Kalshi appealed a Nevada district court's order dissolving a preliminary injunction previously granted to Kalshi, and it has been set for oral argument on April 16, 2026. *See id.* On February 12, 2026, the CFTC filed an amicus brief in a case consolidated with *Assad*, arguing that the CFTC has exclusive jurisdiction to regulate DCMs. (Doc. 17 at 7.)

**B.    Statutory Basis of Suit**

In its Complaint, Kalshi alleges that it is subject to the CFTC's exclusive jurisdiction pursuant to the CEA, 7 U.S.C. § 2(a). (Doc. 1 ¶ 2.) Kalshi argues that the CEA preempts Arizona's gambling regulations under principles of express preemption, field preemption, and conflict preemption. (*Id.* ¶ 4.)

**1.    The Commodity Exchange Act**

The CEA regulates the trading of commodity futures, which are contracts to trade a commodity at a predetermined price on a future date. 7 U.S.C. §§ 1, *et seq.* Congress enacted the CEA in 1936. *See* Pub. L. No. 74-675, 49 Stat. 1491 (1936). Much later, in 1974, Congress established the CFTC and amended the CEA to cover non-agricultural commodity and derivative contracts. *See* Pub. L. No. 93-463, 88 Stat. 1389 (1974). "A derivative is a financial instrument or contract with a price that is directly dependent on the value of one or more underlying assets." *KalshiEX LLC v. Flaherty*, No. 25-cv-02152, 2025 WL 1218313, at *1 (D.N.J. Apr. 28, 2025) (citing *KalshiEX LLC v. CFTC*, No. 23-03257, 2024 WL 4164694, at *1 (D.D.C. Sep. 12, 2024), *stay denied*, 119 F.4th 58 (D.C. Cir. 2024)), *aff'd*, — F.4th —, 2026 WL 924004 (3d Cir. Apr. 6, 2026).

The CEA grants the CFTC "exclusive jurisdiction" to regulate commodities and

futures on designated exchanges. 7 U.S.C. § 2(a)(1)(A). As Kalshi did, an entity must receive approval from the CFTC to become a DCM subject to operate under the regulatory oversight of the CFTC. *Id.* §§ 2(e), 7(a); 17 C.F.R. §§ 38.1, 38.3(a).

Following the 2008 financial crisis, Congress enacted the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank Act"), which amended Section 2(a) of the CEA to include "swaps" under the CFTC's exclusive jurisdiction. *See* Pub. L. No. 111-203, tit. VII, pt. II, 124 Stat. 1376, 1658-754 (2010). Swaps are:

> any agreement, contract, or transaction . . . that provides for any purchase, sale, payment, or delivery . . . that is dependent on the occurrence, nonoccurrence, or the extent of the occurrence of an event or contingency associated with a potential financial, economic, or commercial consequence.

7 U.S.C. § 1a(47)(A), (A)(ii).

The Dodd-Frank Act also created a "Special Rule" addressing "event contracts," defined as "agreements, contracts, transactions, or swaps in excluded commodities that are based upon the occurrence, extent of an occurrence, or contingency . . . by a designated contract market." *Id.* § 7a-2(c)(5)(C)(i). An "excluded commodity" is "an occurrence, extent of an occurrence, or contingency . . . that is . . . (I) beyond the control of the parties to the relevant contract, agreement, or transaction; and (II) associated with a financial, commercial, or economic consequence." *Id.* § 1a(19)(iv). The Special Rule authorizes the CFTC to review certain event contracts and prohibit their exchange if they are determined "to be contrary to the public interest." *Id.* § 7a-2(c)(5)(C)(i)-(ii). The CEA provision granting the CFTC "exclusive jurisdiction" over certain financial instruments includes swaps, but not event contracts. *Id.* § 2(a)(1). At issue in this case is whether the event contracts Kalshi offers are "swaps" and therefore subject to the CEA's grant of exclusive jurisdiction to the CFTC.

### 2.    Arizona's Regulatory Framework

Three years after the United States Supreme Court's decision recognizing states' authority to regulate gambling in *Murphy v. NCAA*, 584 U.S. 453 (2018), the Arizona Legislature passed the 2021 Gaming Act. *See* Act of Apr. 15, 2021, 2021 Ariz. Sess. Laws

- 4 -

ch. 234 (codified at Ariz. Rev. Stat. §§ 5-1301 *et seq.*). The Act authorizes event wagering, so long as it is conducted within the Act's regulatory parameters. Ariz. Rev. Stat. § 5-1303. Under the Gaming Act, "event wagering" is:

> [a]ccepting wagers on sports events or other events, portions of sports events or other events, the individual performance statistics of athletes in a sports event or combination of sports events or the individual performance of individuals in other events or a combination of other events by any system or method of wagering, including in person or over the Internet through websites and on mobile devices.

*Id.* § 5-1301(4)(a). A "[w]ager" is defined as "risking . . . something of value for the opportunity to obtain a benefit from a game or contest of chance or skill or a future contingent event." *Id.* § 13-3301(6).

To conduct event wagering, an entity must apply for and receive a license from the Department. *Id.* § 5-1303(A). Licensed event wagering operators are subject to a broad regulatory framework which includes, for example, prohibiting the licensure of an entity with insider knowledge who could influence the outcome of an event. *See id.* §§ 5-1301(16), 5-1311(A).

Kalshi is not a licensed event wagering operator. (Doc. 18 at 10.)

Except for licensed and regulated gaming, it is a misdemeanor offense to participate in event wagering "on the results of a race, sporting event, contest or other game of skill or chance or any other unknown or contingent future event or occurrence whatsoever." Ariz. Rev. Stat. § 13-3305(B). It is a felony to promote gambling without a license. *Id.* § 13-3303(B).

### C.    Procedural History

Kalshi's Complaint alleges that the CEA's granting of "exclusive jurisdiction" to the CFTC over swaps preempts Arizona from enforcing its gaming laws to prohibit its event contracts. (*See generally* Doc. 1.) Defendants include Jackie Johnson, Director of the Department, and Kristin Mayes, Attorney General for the State of Arizona (collectively, "the State"). According to Kalshi, enforcing Arizona's gambling laws would violate the

Supremacy Clause of the United States Constitution, U.S. Const. art. VI, cl. 2, due to the CFTC's exclusive jurisdiction over DCMs. (*Id.* at 23-24.) Kalshi seeks a declaratory judgment that Arizona laws purporting to regulate Kalshi's DCM violate the Supremacy Clause. (*Id.* at 25.) Kalshi also requests an injunction prohibiting Arizona from enforcing its laws purporting to regulate Kalshi's exchange. (*Id.*)

Days after filing its Complaint, Kalshi filed a motion for preliminary injunction and temporary restraining order, seeking immediate injunctive relief against enforcement action by the State. (Doc. 11.) At a status conference held soon thereafter, the State announced that a twenty-count criminal information against Kalshi had been filed in Arizona Superior Court that morning. The arraignment is set for April 13, 2026. The Court ordered Kalshi to show cause why, under *Younger v. Harris*, 401 U.S. 37 (1971), it should not abstain from hearing this case in deference to the state court proceedings. (Doc. 15.) The Court denied Kalshi's request for a temporary restraining order and set a hearing on the motion for preliminary injunction and order to show cause. (*Id.*)

On April 2, 2026, the United States of America and the CFTC filed a Complaint against the State of Arizona and others, arguing that the CEA preempts the State's enforcement of its gambling laws. *See United States v. Arizona*, No. 2:26-cv-02246-MTL (D. Ariz. 2026). The Court consolidated the actions. (Doc. 37.) Kalshi then renewed its motion for an immediate temporary restraining order. (Doc. 42.)

On April 3, 2026, the Court heard argument on Kalshi's motions for temporary and preliminary relief. Also addressed were issues of *Younger* abstention and the Anti-Injunction Act, 28 U.S.C. § 2283.

## II.     DISCUSSION

### A.     *Younger* Abstention

As the Arizona Attorney General has initiated criminal proceedings against Kalshi in Arizona Superior Court, this Court must first consider whether it must abstain under the principles of *Younger*. In *Younger*, the United States Supreme Court held that federal courts must abstain from interfering with state court proceedings, even in cases where federal

subject matter jurisdiction exists. *Younger*, 401 U.S. at 43-54. The holding is grounded in the notions of equity, comity, and federalism, all of which safeguard "a system . . . in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." *Id.* at 44.

At the beginning of the short history of the case before this Court, the United States was not a party. The United States has since sued the State of Arizona, the Arizona Attorney General, and the Director of the Department, and that suit has been consolidated with this case. (Doc. 37.) The presence of the federal sovereign is determinative in that it forecloses *Younger* abstention.

The Ninth Circuit addressed this issue in *United States v. Morros*, 268 F.3d 695, 699, 707 (9th Cir. 2001), where the United States sued in federal court contending that a Nevada law, as administered by the state engineer, was preempted under the Supremacy Clause. It held that the policy rationale underlying *Younger*—"avoid[ing] unnecessary conflict between state and federal governments"—"lacks force where the United States is a litigant." *Id.* (citation modified). In such situations, *Younger* abstention is inappropriate. *Id.* The Northern District of California applied the same rule in *Yurok Tribe v. U.S. Bureau of Reclamation*, 654 F. Supp. 3d 941, 959 (N.D. Cal. 2023), finding *Younger* abstention unavailable where the United States' crossclaim against a state agency turned on whether a state water agency's order was preempted by the Endangered Species Act.

As in *Morros*, the presence of a federal preemption claim, asserted by the United States, makes the application of *Younger* abstention "disingenuous." *Id.*; *Morros*, 268 F.3d at 708. The holding in *Morros* applies with full force here because, consistent with *Morros* and *Yurok Tribe*, the dispute turns on preemption. In their Complaint, the United States and the CFTC ask this Court to "enter a judgment declaring that the challenged provisions, or any other state laws pertaining to gambling or wagering, as applied to CFTC-Designated Contract Markets, violate the Supremacy Clause and are therefore preempted, unconstitutional, and invalid." *United States v. Arizona*, 2:26-cv-02246-MTL, Doc. 1

at 30-31 (D. Ariz. Apr. 2, 2026). The United States thus asserts "a superior federal interest against a state, [so] the forum of choice for the federal government is the federal court." *Morros*, 268 F.3d at 708.

Although this case does not involve the same decades-long dispute between state and federal sovereigns involved in *Morros*, the federal-state conflict here is no less substantial. Prediction market operators have haled numerous state regulators into court to challenge state enforcement, and the United States has now filed its own action asserting exclusive federal authority over DCMs. *Morros* recognizes that such a direct clash between the federal government and states' competing claims to regulatory authority involves "substantial conflict and friction." *Id.* Where that friction is "inevitable," as it is here, the Court acknowledges that the federal government "has a great interest in having the federal court conduct the preemption analysis," and this Court must defer to the United States' choice of forum. *Id.* at 708-09. This Court will not abstain under *Younger*.

### B.    Anti-Injunction Act

Kalshi requests that this Court enter a preliminary injunction enjoining the criminal prosecution of Kalshi. Generally, this Court's analysis as to whether preliminary relief is warranted would proceed under the factors set forth in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008). But the Court must determine the threshold question of whether the requested injunctive relief is barred by the Anti-Injunction Act, codified at 28 U.S.C. § 2283.*

The Anti-Injunction Act ("AIA") represents a longstanding limitation on federal court remedies that may interfere with state judicial proceedings. *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 142 (1988). The AIA provides:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283.

---

\* The Court addresses only whether Kalshi has met the standard for preliminary injunctive relief. At this stage, the Court does not pass on the ultimate question of whether a permanent injunction may issue.

The AIA imposes "an absolute prohibition against any injunction of any state-court proceedings, unless the injunction falls within one of the three specifically defined exceptions in the Act." *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 630 (1977) (plurality opinion). "Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 297 (1970).

### 1.    The Requested Relief

The precise nature of the relief Kalshi seeks has been the subject of much confusion. Before the hearing, the parties disagreed on whether Kalshi sought preliminary relief that would halt the state court proceedings. This stemmed from Kalshi's statement that, "if this Court grants Kalshi the relief it seeks, the result would *not* be to stay or block the state-court proceedings." (Doc. 26 at 3.) The State understood this as a concession that Kalshi is "not seeking to stay or enjoin the state court proceedings." (Doc. 42-1 at 3.) Kalshi, however, "emphatically dispute[s] that there has been any such concession." (*Id.*) Kalshi maintains that it does not seek an injunction against the state court itself, but "Kalshi seeks to restrain 'state executive officials from enforcing state laws that are contrary to federal law,' as well as a 'declaration' that state law is preempted." (Doc. 26 at 2.)

Kalshi's Complaint requests a declaratory judgment that the CEA preempts Arizona's gaming laws. (*See* Doc. 40 at 3 ("[T]he AIA does not apply to declaratory judgments, and Kalshi has also sought that form of relief.").) The Court will not issue a declaratory judgment at this stage. The request is premature, since a declaratory judgment is a final decision on the merits and is not appropriately issued as preliminary relief. *Compare* 28 U.S.C. § 2201(a) (providing that a declaratory judgment "shall have the force and effect of a final judgment or decree and shall be reviewable as such"), *with id.* § 1292(a) (listing courts' rulings on injunctions, but not declaratory judgments, as interlocutory decisions reviewable by the courts of appeals).

From what the Court can discern, Kalshi alternatively seeks a finding of preemption

as part of the likelihood of success factor for a preliminary injunction. Kalshi urges this Court to focus on the date it filed its motion for preliminary relief, when the requested preliminary injunction would operate prospectively to restrain only future enforcement actions, since there were no pending state court proceedings to enjoin. (Doc. 40 at 2.) Kalshi argues the injunction falls outside the AIA's bar on "injunction[s] to stay proceedings." (Doc. 26 at 2); 28 U.S.C. § 2283. To issue the requested preliminary injunction, this Court must find that Kalshi is likely to succeed on its claim that the CEA preempts state law. *Winter*, 555 U.S. at 20. Kalshi appears poised to invoke that preemption finding in state court for its preclusive effect. (Doc. 40 at 2.)

The Court is not persuaded. For one, if this Court did grant an injunction against prospective enforcement, it is doubtful that the Court's finding on the likelihood of success on its preemption claim would have preclusive effect in state court. "[I]nterlocutory injunctive relief does not ordinarily have preclusive effect." *Canez v. Guerrero*, 707 F.2d 443, 446 (9th Cir. 1983) (citing 18 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 4445 (1981 & Supp. 1983)); *see also Starbuck v. City & County of San Francisco*, 556 F.2d 450, 457 n.13 (9th Cir. 1977) ("[G]ranting a preliminary injunction . . . is not a final judgment sufficient for collateral estoppel purposes.").

Even assuming a preemption determination could be invoked in state court for its preclusive effect, Kalshi has not sufficiently demonstrated that the Court may issue an injunction against future enforcement. Kalshi has offered no evidence that the State will commence any further enforcement proceeding beyond the pending criminal prosecution. The threat of future injury cannot be "conjectural or hypothetical" but must be "certainly impending" to constitute an injury in fact for injunctive relief purposes. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018); *see also Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) ("[A]n injunction cannot issue merely because it is possible that there will be an irreparable injury to the plaintiff; it must be likely that there will be.") (citing *Winter*, 555 U.S. at 22). Without demonstrating that future enforcement is imminent, the Court cannot grant a preliminary injunction

against the State's speculative future enforcement actions. It would therefore be inappropriate to issue an injunction restraining the State's future enforcement, as well as any declaration couched within the analysis supporting the issuance of that injunction.

More plainly, Kalshi states it is requesting an injunction that "restrain[s] 'state executive officials from enforcing state [gambling] laws.'" (Doc. 26 at 2.) It makes no difference whether the requested relief is directed against the state court or the state officials prosecuting the case, as the AIA treats the two the same. *See L.A. Mem'l Coliseum Comm'n v. City of Oakland*, 717 F.2d 470, 473 (9th Cir. 1983) (holding that the AIA "cannot be evaded by addressing the order to the parties or prohibiting utilization of the results of a completed state proceeding") (quoting *Atl. Coast Line*, 398 U.S. at 287). The Court analyzes Kalshi's request as one for a preliminary injunction imposed against those state officials prosecuting Kalshi in state court. Indeed, when asked to definitively articulate the requested relief on the record, Kalshi's counsel confirmed that Kalshi "want[s] an injunction that the State . . . cannot prosecute Kalshi." (Hr'g. Tr. 89:4-6.)

### 2.    Timing of the State Proceedings

Kalshi relies on *Dombrowski v. Pfister*, 380 U.S. 479, 484 n.2 (1965), for the proposition that the AIA "do[es] not preclude injunctions against the institution of state court proceedings, but only bar[s] stays of suits already instituted." (*See* Doc. 26 at 4.) Kalshi points out that the Supreme Court observed that the state court indictments were "not obtained until after the filing of the [federal] complaint," which meant that "no state 'proceedings' were pending within the intendment of [the AIA]." (*Id.* (alterations in original).)

But *Dombrowski* involved different facts and a different procedural posture. The district court in *Dombrowski* dismissed a case where plaintiffs sought to enjoin the State of Louisiana from using its laws to purportedly harass civil rights activists. *Dombrowski*, 380 U.S. at 481-83. The prosecutors were alleged to have harassed the plaintiffs without any expectation of conviction. *Id.* at 482. That context is much different than the State's enforcement of its gambling laws. Moreover, the state court indictments in *Dombrowski*

- 11 -

"were obtained only because the District Court erroneously dismissed the complaint and dissolved the temporary restraining order." *Id.* at 484 n.2. In this case, the State filed the criminal information against Kalshi before any proceedings in federal court on the merits.

As for *Dombrowski*, the Central District of California has recognized "[t]here is a circuit split as to whether, as is the situation here, the Act applies when the federal injunction is sought before the initiation of state court proceedings." *Monster Beverage Corp. v. Herrera*, No. 13-00786, 2013 WL 12131740, at *10 (C.D. Cal. Dec. 16, 2023). In *Barancik v. Investors Funding Corp. of New York*, 489 F.2d 933, 934 (7th Cir. 1973), the Seventh Circuit articulates one side of the split: the AIA "prohibits a federal court from staying proceedings in a state court which were not commenced until after a motion to enjoin the institution of such proceedings was filed." *Accord Hyde Park Partners, L.P. v. Connolly*, 839 F.2d 837, 842 n.6 (1st Cir. 1988); *Nat'l City Lines, Inc. v. LLC Corp.*, 687 F.2d 1122, 1127 (8th Cir. 1982). Holding otherwise, the Seventh Circuit reasoned, would provide "an absolute right to defeat a well-founded motion by taking the very step the federal court was being urged to enjoin." *Barancik*, 489 F.2d at 937. The court raises several policy concerns, most notably asserting that its "rule has the salutary advantage of discouraging the unseemly race to the state courthouse." *Id.* at 935 n.5. Under this view, the AIA would not bar the issuance of an injunction.

Other courts of appeals have taken the opposite position, most prominently the Fourth Circuit. *See Denny's, Inc. v. Cake*, 364 F.3d 521, 528-31 (4th Cir. 2004); *accord Standard Microsystems Corp. v. Texas Instruments*, 916 F.2d 58, 61-62 (2d Cir. 1990); *Royal Ins. Co. of Am.*, 3 F.3d 877, 884 (5th Cir. 1993); *Roth v. Bank of the Commonwealth*, 583 F.2d 527, 533 (6th Cir. 1978). In *Denny's*, the Fourth Circuit holds that the AIA's "prohibition on enjoining state court proceedings applies to any such proceeding pending at the time the federal court *acts* on the request for injunctive relief, regardless of when the state court action was filed." *Denny's*, 364 F.3d at 531. The court bases its holding on the plain language of the AIA, concluding that "nothing in the Act confines its bar to situations in which the federal plaintiff requests injunctive relief *after* the state suit has been filed."

*Id.* at 530. It also refutes the *Barancik* court's policy rationale, including the court's statement that its rule would discourage a race to the courthouse. *Id.* at 531. "[B]y hinging the applicability of § 2283 on whether the state or federal suit is commenced first, the *Barancik* rule creates a race to the courthouse of its own." *Id.* Under this line of authority, it is immaterial that the State's filing of criminal charges occurred after Kalshi's Complaint was filed in federal court.

The Ninth Circuit has not yet weighed in, but district courts in this Circuit have applied the holding in *Denny's*. *See Monster Beverage*, 2013 WL 12131740, at *10; *Kag W., LLC v. Malone*, No. 15-03827, 2016 WL 3951651, at *3 (N.D. Cal. July 22, 2016); *Easterday Dairy, LLC v. Fall Line Cap., LLC*, No. 22-01000, 2022 WL 17104572, at *8-9 (D. Or. Nov. 22, 2022). Resolving Kalshi's argument requires this Court to choose between competing interpretations of the AIA among the courts of appeal.

The Court finds that the Fourth Circuit's interpretation is more faithful to the text of the AIA. "If [a statute's] language has a plain meaning or is unambiguous, the statutory interpretation inquiry ends there." *CVS Health Corp. v. Vividus, LLC*, 878 F.3d 703 (9th Cir. 2017) (citation omitted). The AIA states that a federal court "may not grant an injunction to stay proceedings in a State court," unless certain exceptions apply. 28 U.S.C. § 2283. State proceedings must be pending at the time the Court rules, or there would be no state proceedings to enjoin. The statutory text supplies an unequivocal prohibition against such injunctions, and it says nothing about when the state proceedings began. At most, the competing policy rationales cut in both directions. But policy arguments cannot supersede the clear statutory text. *Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 192 (2016). The text does not leave room for the judicial exception recognized by *Barancik*.

The Court finds that the AIA applies so long as state proceedings are pending at the time the Court considers the request for injunctive relief, regardless of when those proceedings started. The AIA applies and bars preliminary injunctive relief, unless an exception applies.

- 13 -

### 3.     Exceptions to the Anti-Injunction Act

Kalshi argues that an injunction against the state criminal proceedings falls within two exceptions. First, Kalshi invokes the exception for proceedings "necessary in aid of [the Court's] jurisdiction." (Doc. 40 at 5 (citing 28 U.S.C. § 2283).) The exception applies where an injunction is "necessary to preserve exclusive federal jurisdiction." *Sycuan Band of Mission Indians v. Roache*, 54 F.3d 535, 540 (9th Cir. 1994). In *Sycuan*, the Ninth Circuit reviewed a district court's issuance of a permanent injunction. *Id.* at 537, 540. The district court had determined that criminal enforcement of the state's laws prohibiting slot machines was preempted by the Indian Gaming Regulatory Act. *Id.* at 540. Here, by contrast, the Court is presented only with a request for preliminary injunctive relief. At this stage, the Court's inquiry is limited to whether Kalshi has shown a likelihood of success on its preemption claim, not a definitive determination as to whether preemption exists. Absent a merits determination on a full record, the Court cannot conclude that federal jurisdiction is exclusive. The "necessary in aid of jurisdiction" exception therefore does not apply.

Although not found in the text of the AIA, Kalshi points to an exception to the AIA for injunctions sought by the federal government. (Doc. 40 at 5-6.) The AIA "does not apply to injunctions issued at the request of the United States or administrative agencies enforcing applicable federal law." *SEC v. Wencke*, 622 F.2d 1363, 1368 (9th Cir. 1980); *see also Mitchum v. Foster*, 407 U.S. 225, 235-36 (1972) (stating the AIA "permits a federal injunction of state court proceedings when the plaintiff in the federal court is the United States itself, or a federal agency asserting 'superior federal interests'") (citations omitted). Kalshi argues that, because this case has been consolidated with a suit brought by the United States and CFTC, the AIA does not apply. (Doc. 40 at 5-6.)

The exception for injunctions sought by the United States does not apply because the federal government has not sought the preliminary injunction. The ultimate relief sought by the federal government and Kalshi are similar. The federal government requests "a permanent injunction that prohibits Defendants . . . from enforcing the challenged

provisions or any other state laws pertaining to gambling or wagering, as applied to CFTC-Designated Contract Markets." *United States v. Arizona*, No. 2:26-cv-2246-MTL, Doc. 1 at 32 (D. Ariz. Apr. 2, 2026). Kalshi asks this Court to enjoin the State's prosecution based on the same finding of preemption. (*See* Doc. 40 at 2, 5-6.) But the exception to the AIA applies only "to injunctions issued at the request of the United States," *Wencke*, 622 F.2d at 1368, and the question before this Court is whether to grant *Kalshi's* request for a preliminary injunction. Although the basis for granting Kalshi preliminary injunctive relief would be largely identical to the basis for granting a permanent injunction, the federal government has not yet requested the preliminary relief that this Court is assessing. So the Court will not apply the exception here.

The Court finds that the AIA applies and the preliminary injunction Kalshi requests does not fall within any exception to the application of the AIA. The Court is barred by statute from issuing the injunction, so it must deny Kalshi's requests for preliminary relief.

## III.    CONCLUSION

Accordingly,

**IT IS ORDERED** that the order for Kalshi to show cause why this Court should not abstain under the doctrine of *Younger* abstention (Doc. 15) is **DISCHARGED**.

**IT IS FURTHER ORDERED** that Kalshi's Motion for Preliminary Injunction (Doc. 11) is **DENIED**.

**IT IS FINALLY ORDERED** that Kalshi's Motion for Immediate Temporary Restraining Order (Doc. 42) is **DENIED**.

Dated this 8th day of April, 2026.

/s/ Michael T. Liburdi
United States District Judge

- 15 -