TIMOTHY COURCHAINE
U.S. Attorney for the District of Arizona
40 N. Central Avenue, Suite 1800
Phoenix, AZ 85004
(602) 514-7500

BRETT A. SHUMATE
Assistant Attorney General
YAAKOV M. ROTH
Principal Deputy Assistant Attorney
General
TIBERIUS DAVIS
Counsel to the Assistant Attorney
General
U.S. Department of Justice
Civil Division
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044-0878
Email: Tiberius.Davis@usdoj.gov
Phone:  (202) 514-2000

*Attorneys for the United States*

TYLER S. BADGLEY
General Counsel
M. JORDAN MINOT
Deputy General Counsel
ANNE W. STUKES
Senior Assistant General Counsel
CARLIN METZGER
Senior Assistant General Counsel
U.S. Commodity Futures Trading
Commission
Three Lafayette Center
1155 21st Street, NW
Washington, DC 20581
Email:  JMinot@cftc.gov
Phone:  (202) 418-5000

*Attorneys for the Commodity
Futures Trading Commission*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

_____

KalshiEX LLC,

    Plaintiff,

THE UNITED STATES OF AMERICA; and COMMODITY FUTURES TRADING COMMISSION

    Consolidated Plaintiffs,

v.

Jackie Johnson, *et al.*,

    Defendants,

STATE OF ARIZONA, *et al.*

    Consolidated Defendants.

Case No:
CV-26-01715-PHX-MTL

Hon. Michael T. Liburdi

**CONSOLIDATED PLAINTIFFS' SUPPLEMENTAL BRIEF ON THE ANTI-INJUNCTION ACT, LACHES DEFENSE, AND IRREPARABLE HARM**

**PRELIMINARY STATEMENT**

Plaintiffs United States of America ("USA") and Commodity Futures Trading Commission ("CFTC") submit this supplemental brief to address the additional legal issues raised during the April 9, 2026 status hearing concerning Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 49). In response to the Court's order, ECF No. 53, Plaintiffs explain that (1) the Anti-Injunction Act does not apply when the United States or one of its agencies seeks injunctive relief against a state; (2) the United States has an equitable cause of action to vindicate its interests under the Supremacy Clause; (3) the United States and the CFTC have acted expeditiously to take action to protect the national public interest; and (4) an immediate temporary restraining order is necessary to prevent Arizona from further disrupting federally-regulated markets by attempting to enforce preempted state gambling and wagering laws in a state criminal proceeding.

The Commodity Exchange Act ("CEA" or the "Act"), 7 U.S.C. §1, *et seq.*, expressly and implicitly preempts state gambling laws as applied to CFTC-regulated markets and market participants. 7 U.S.C. § 2(a)(1)(A); *see* ECF No. 49 at 14-19. And so, each of defendants' ("Arizona's") steps taken to enforce state gambling and wagering laws against a CFTC-regulated designated contract market ("DCM") operating in compliance with applicable federal law violates the Constitution's Supremacy Clause. First, Arizona sent cease and desist letters to multiple CFTC-regulated DCMs for operating within a comprehensive federal statutory and regulatory scheme. Then, Arizona filed criminal charges against one of those DCMs. And yesterday, Arizona made it clear that it will not agree or take any steps to seek a stay or postpone the scheduled arraignment of a CFTC-regulated DCM on state gambling and wagering charges.

Every step Arizona takes towards criminally prosecuting one of the CFTC's regulated entities causes additional disruption to the markets exclusively regulated

1

by the CFTC and thus causes irreparable harm to the CFTC's exclusive jurisdiction, authority, and operations. And a short delay in Arizona's criminal case causes no harm to Arizona—Defendants waited more than 10 months after they sent a cease and desist letter to a DCM before acting. The harm to the federal government and the markets it regulates that would result from Arizona's continued enforcement of its preempted laws would be, however, irreparable. This Court should halt Arizona's enforcement of its inapplicable laws against DCMs by entering a temporary restraining order and a preliminary injunction.

## ARGUMENT

### I. The Anti-Injunction Act does not apply when the United States or its agencies seek injunctive relief against a state

As this Court observed in its April 8, 2026, Order, ECF No. 51 at 14, the Anti-Injunction Act ("AIA"), 28 U.S.C. § 2283, does not apply when the United States or one of its agencies seeks an injunction against a state. A contrary rule would severely frustrate federal interests. The AIA serves as a protection of state courts from interference by federal courts, but, as multiple courts have held, that limit cannot extend to circumstances where a State invades the sovereign authority of the United States.

The AIA provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. The AIA generally reflects Congress's longstanding policy against federal judicial interference with state court actions. It does not apply, however, when the plaintiff in federal court is the United States or one of its agencies, because doing so would frustrate federal interests. *Leiter Mins., Inc. v. United States*, 352 U.S. 220, 226 (1957) ("The frustration of superior federal interests that would ensue from precluding the Federal Government from obtaining a stay of state court proceedings . . . would be

so great that we cannot reasonably impute such a purpose to Congress from the general language of 28 U.S.C. § 2283 alone."). The Supreme Court has long recognized that "[t]he purpose of § 2283 was to avoid unseemly conflict between the state and the federal courts where the litigants were private persons, not to hamstring the Federal Government and its agencies in the use of federal courts to protect federal rights." *N.L.R.B. v. Nash-Finch Co.*, 404 U.S. 138, 146 (1971). Accordingly, Supreme Court has long recognized that the AIA does not apply where "the plaintiff in the federal court is the United States itself, or a federal agency asserting 'superior federal interests.'" *Mitchum v. Foster*, 407 U.S. 225, 236 (1972).

Adhering to that precedent, courts across the country, including the Ninth Circuit, have long held that "[t]he Anti-Injunction Act does not apply at all when it is the United States that seeks to stay proceedings in a state court." *United States v. Gerace*, No. 21-2419, 2023 WL 3243477, at *2 (2d Cir. May 4, 2023) (quoting 17A Wright & Miller, *Federal Practice & Procedure* § 4222 (3d ed. 2022) and collecting cases); *S.E.C. v. Wencke*, 622 F.2d 1363, 1368 (9th Cir. 1980) ("This exception to the statute applies also when an administrative agency is enforcing applicable federal law."); *In re Grand Jury Subpoena*, 866 F.3d 231, 233 (5th Cir. 2017); *Eden Mem'l Park Ass'n v. United States*, 300 F.2d 432, 437 (9th Cir. 1962). Plainly, the AIA "does not apply to injunctions issued at the request of the United States or administrative agencies enforcing applicable federal law." *Wencke*, 622 F.2d at 1368. That is precisely what the CFTC and USA seek to do here: enforce CFTC's exclusive jurisdiction that preempts the very state laws Arizona is trying to enforce.[1]

---

[1] Separately, "[b]ecause the United States was not a party to the state-court litigation, the Anti–Injunction Act does not apply." *Commodities Exp. Co. v. Detroit Int'l Bridge Co.*, 695 F.3d 518, 527 (6th Cir. 2012).

**II.      The USA and CFTC have an equitable cause of action under the Supremacy Clause for their preemption claims**

Though the Court did not raise a cause of action issue in its order, Arizona surprisingly floated that the USA and CFTC might lack a cause of action in yesterday's hearing.  Notably, Arizona did not raise this argument against Kalshi. For good reason, the argument is meritless.  *See Kalshiex LLC v. Orgel*, 2026 WL 474869, at *6 (M.D. Tenn. Feb. 19, 2026) (rejecting this argument against Kalshi in an identical case).

It has long been understood that the federal government may bring an action for injunctive relief against a State to enjoin enforcement of preempted state law. *E.g.*, *Geo Grp., Inc. v. Newsom*, 50 F.4th 745, 758 (9th Cir. 2022) (en banc) (remanding for further proceedings on a preliminary injunction against enforcement of state immigration law because "the outcome in this case is clear under basic Supremacy Clause principles and Supreme Court authority").  "While there is no implied right of action under the Supremacy Clause, there is an equitable tradition of suits to enjoin unconstitutional actions by state actors." *United States v. Missouri*, 114 F.4th 980, 986 (8th Cir. 2024) (citing *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326-27 (2015)); *see also Bud Antle, Inc. v. Barbosa*, 45 F.3d 1261, 1269 (9th Cir. 1994) ("[I]t appears to be the general rule that a private party may seek declaratory and injunctive relief against the enforcement of a state statutory scheme on the ground of federal preemption.").

That rule naturally meshes with "the general rule that the United States may sue to protect its interests." *Wyandotte Transp. Co. v. United States*, 389 U.S. 191, 201 (1967).  After all, "[w]hat logical basis is there for courts to say private parties and government agencies or actors may bring a[ ] [preemption] action sounding in equity but not the United States?" *United States v. Texas,* 97 F.4th 268, 275, 277-78 (5th Cir. 2024).  Indeed, the United States often seeks equitable relief against States under the Supremacy Clause without question.  *See, e.g., id.*; *Arizona v.*

*United States*, 567 U.S. 387 (2012); *United States v. California*, 921 F.3d 865 (9th Cir. 2019). If any party could ever seek equitable relief against a preempted state law to vindicate federal interests, it is the United States. *See United States v. Sup. Ct. of N.M.*, 839 F.3d 888, 906 n.9 (10th Cir. 2016) ("To the extent that *Armstrong's* Supremacy Clause holding is motivated by the desire to preserve the federal government's 'ability to guide the implementation of federal law,' this counsels in favor of—not against—permitting the United States to invoke preemption in order to protect its interest"). That is precisely what this case is about.

### III.    The doctrine of laches does not apply

Based on Arizona's references to the defense of "laches" during the April 9, 2026, hearing, the Court ordered the United States and CFTC to brief its applicability. Arizona's laches defense fails for two reasons. First, "[i]t is well settled that the United States is not . . . subject to the defense of laches in enforcing its rights." *United States v. Summerlin*, 310 U.S. 414, 416 (1940) (collecting cases); *see also Bresson v. Comm'r*, 213 F.3d 1173, 1176 (9th Cir. 2000); *United States v. Sobkowicz*, No. 92-15648, 1993 WL 148093 (9th Cir. May 10, 1993). The United States and the CFTC have filed this action to enforce a public right and protect a public interest the operation of federally regulated contract markets without state interference. Laches cannot apply.

Second, as a factual matter, the United States and the CFTC have taken rapid action to seek appropriate preliminary injunctive relief from this Court as soon as it became clear that immediate relief was necessary to prevent a serious disruption to CFTC-regulated markets. There has been no delay, let alone unreasonable delay. Kalshi began offering the challenged contracts in Arizona over a year ago. Around 11 months ago, Arizona Kalshi sent a cease and desist letter. ECF No 1-2. Kalshi filed this case on March 12, 2026, ECF No. 1, and moved for a temporary restraining order and preliminary injunction on March 16, 2026, ECF No. 11.

Arizona then announced the filing of criminal charges against Kalshi on March 17, 2026. *See* Press Release, Kris Mayes, Att'y Gen. of Ariz., Attorney General Mayes Charges Kalshi With Illegal Gambling Operation, Election Wagering in Arizona (Mar. 17, 2026), https://www.azag.gov/press-release/attorney-general-mayes-charges-kalshi-illegal-gambling-operation-election-wagering.

At the time the federal plaintiffs filed their complaint, this Court was considering a motion by Kalshi, which the United States and CFTC believed was meritorious, and it was not apparent that an emergency motion by the government would be necessary. As a result of the new state court proceeding, the Court then ordered supplemental briefing on the Anti-Injunction Act on March 28. ECF No. 21. Given Arizona's escalation and the increasing complexity of Kalshi's case as a result, the United States moved quickly to file a complaint against Arizona on April 2. When it became clear that Kalshi's attempt to seek preliminary relief was in jeopardy after the April 3 hearing, the United States and CFTC filed their motion seeking a temporary restraining order and preliminary injunction on April 8. ECF No. 49. Far from delay, this is an example of prompt action in a complex and evolving legal dispute. The timeline in this case reflects rapid action by the United States and the CFTC once the state of Arizona escalated its efforts to disrupt federal markets through the filing of criminal charges against Kalshi.

## IV. Arizona's attempts to shut down a CFTC-regulated designated contract market implicates clear federal interest and causes irreparable harm to the federal government

During the April 9 status conference, Arizona made clear that it was unwilling to seek a stay of the criminal action filed against Kalshi, or even to delay or postpone the arraignment scheduled in that criminal case for Monday, April 13. An immediate temporary restraining order is therefore necessary to prevent Arizona from further disrupting federally regulated markets by proceeding with its effort to enforce preempted state gambling and wagering laws in this state criminal

6

proceeding.

The CEA itself describes the public interest at stake.  When enacting the CEA, Congress expressly found that "[t]he transactions subject to this chapter are entered into regularly in interstate and international commerce and are affected with a national public interest by providing a means for managing and assuming price risks, discovering prices, or disseminating pricing information through trading in liquid, fair, and financially secure trading facilities."  7 U.S.C. § 5(a). The express purpose of the CEA is to serve this public interest "through a system of effective self-regulation of trading facilities, clearing systems, market participants and market professionals under the oversight of the Commission." 7 U.S.C. § 5(b).

The CFTC accomplishes this congressionally mandated mission by exercising the authority provided in the CEA to oversee a reticulated statutory and regulatory scheme that applies to DCMs and the participants on those markets.  It is not possible for the CFTC to accomplish this mission if state authorities take action to undermine or disrupt this important federal regulatory scheme, such as Arizona's criminal prosecution, which works to destabilize a market that depends on legal clarity and chill lawful conduct. *Buckley v. Valeo*, 424 U.S. 1, 41 n.48 (1976) (Uncertainty about the law "operate[s] to inhibit protected [conduct] by inducing citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked.") (cleaned up).  Indeed, Congress intended to preempt application of 50 state laws when it gave the CFTC exclusive jurisdiction.  *See* CFTC Act: Hearings Before the S. Comm. on Agric. & Forestry on S. 2485, S. 2578, S. 2837, and H.R. 13113, 93d Cong., 2d Sess. 685 (1974) (statement of Sen. Clark) ("different State laws would just lead to total chaos, if that preemption didn't occur.").  Arizona's pursuit of criminal charges against Kalshi, coupled with its demands that Kalshi either cease operations in Arizona or accede to demands that it comply with state laws that conflict with applicable

7

CFTC regulations, has precipitated this lawsuit and required the United States and the CFTC to seek immediate temporary and preliminary relief to protect the federal government's sovereign interests.  Each additional step in the criminal enforcement proceedings introduces additional disruptive harms to CFTC-regulated markets.

Absent an injunction, the United States and the CFTC will suffer irreparable harm.  Irreparable harm necessarily results from the enforcement of an unconstitutional state law.  *Goldie's Bookstore, Inc. v. Superior Ct. of Cal.*, 739 F.2d 466, 472 (9th Cir. 1984) ("An alleged constitutional infringement will often alone constitute irreparable harm."). Courts "*presume* that a constitutional violation causes a preliminary injunction movant irreparable harm and that preventing a constitutional violation is in the public interest." *Baird v. Bonta*, 81 F.4th 1036, 1046 (9th Cir. 2023) (reversing the denial of a preliminary injunction sought by a gun owner challenging a California open carry law on Second Amendment grounds); *United States v. California*, 921 F.3d 865, 893 (9th Cir. 2019) (upholding district court's application of a presumption of irreparable harm to the United States in enforcing federal immigration laws and noting that "preventing a violation of the Supremacy Clause serves the public interest.").  And the United States suffers irreparable harm "when its valid laws in a domain of federal authority are undermined by impermissible state regulations." *United States v. Alabama*, 691 F.3d 1269, 1301 (11th Cir. 2012).

The federal government's ability to enforce its policies and achieve its objectives will be undermined by the State's enforcement of statutes that interfere with federal law. *See Crosby v. National Foreign Trade Council*, 530 U.S. 363, 379-80 & n. 14 (2000).  "The ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity, and reflects a long history of judicial review of illegal executive action, tracing back to England." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015). The United States and the CFTC seek to protect their distinct interests in preventing a State

from nullifying federal law and evading Congress's intent and direction in the CEA.

Arizona seeks not only to regulate CFTC-regulated DCMs but to criminally prosecute them for trading in markets in compliance with federal law. Each additional step that Arizona takes in its criminal prosecution serves both to increase the risk to companies like Kalshi in complying with federal law and generally serves to disrupt the markets that the CFTC is tasked with regulating. There is no remedy at law for such an injury. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992). The likelihood of irreparable harm to the interests of the United States and the CFTC thus warrants preliminary relief. *See American Ins. Ass'n v. Garamendi*, 539 U.S. 396, 413 (2003) (enjoining permanently the enforcement of a state statute that is preempted by federal law because it interferes with the federal government's ability to enforce its policies); *Crosby*, 530 U.S. at 372, 379-80 (same).

Preserving the status quo through a temporary restraining order and preliminary injunction is less harmful than allowing state laws that are likely preempted by federal law to be enforced. See *American Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1059-60 (9th Cir. 2009). There is no public interest in Arizona's enforcement of preempted laws, let alone in enforcing them in an accelerated fashion. *Chamber of Com. of U.S. v. Edmondson*, 594 F.3d 742, 771 (10th Cir. 2010). Arizona waited nearly ten months to take action against a DCM after sending a cease and desist letter. *Compare* ECF No. 1-2 (May 21, 2025 Cease and Desist Letter), *with* Case 2:26-cv-02246-MTL ECF No. 1-2 (March 16, 2026 criminal Information). Arizona has demonstrated no reason why it will be harmed by another month's delay while this Court considers the federal government's preliminary injunction motion. Entering a temporary restraining order would both protect the federal government from irreparable harm and would preserve the status quo while the Court considers the merits.

## CONCLUSION

For these reasons, and those stated in Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction, ECF No. 49, the United States and the CFTC respectfully ask this court to enter a temporary restraining order and preliminary injunction prohibiting Arizona from applying its laws against CFTC-regulated DCMs.

Dated: April 10, 2026                    Respectfully submitted,

By: */s/ Tiberius Davis*                    */s/ Anne W. Stukes*

*Attorneys for the United States*          *Attorneys for the Commodity Futures*
*of America*                               *Trading Commission*

TIMOTHY COURCHAINE                     Tyler S. Badgley
U.S. Attorney for the District of       General Counsel
Arizona                                M. Jordan Minot
40 N. Central Avenue,                   Deputy General Counsel
Suite 1800                             Anne W. Stukes
Phoenix, AZ 85004                       Senior Assistant General Counsel
(602) 514-7500                         Carlin Metzger
                                       Senior Assistant General Counsel
BRETT A. SHUMATE
Assistant Attorney General             U.S. Commodity Futures Trading
Civil Division                         Commission
                                       Three Lafayette Center
YAAKOV M. ROTH                         1155 21st Street, NW
Principal Deputy Assistant             Washington, DC 20581
Attorney General                       Tel: (202) 209-1087
                                       Fax: (202) 418-5567
TIBERIUS DAVIS                         tbadgley@cftc.gov
Counsel to the Assistant               jminot@cftc.gov
Attorney General                       astukes@cftc.gov
450 5th St NW,                         cmetzger@cftc.gov
Washington, DC 20001
Tiberius.davis@usdoj.gov
202-860-8970

10