Sean J. O'Hara (#024749)
Kercsmar & O'Hara
8800 East Raintree Drive, Suite 310
Scottsdale, Arizona 85260
Telephone: (480) 776-3432
sjo@kandolaw.com

*[Counsel Continued on Signature Block]*

*Attorneys for North American Derivatives Exchange, Inc.,*
*d/b/a Crypto.com | Derivatives North America*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| KalshiEX LLC,<br><br>       Plaintiff,<br><br>The United States of America; and Commodity Futures Trading Commission,<br><br>       Consolidated Plaintiffs,<br><br>v.<br><br>Jackie Johnson, et al.,<br><br>       Defendants,<br><br>State of Arizona, et al.,<br><br>       Consolidated Defendants. | No. CV-26-01715-PHX-MTL<br>No. CV-26-02246-PHX-DMF<br><br>Hon. Michael T. Liburdi<br><br>**MOTION TO INTERVENE AS PLAINTIFF BY NORTH AMERICAN DERIVATIVES EXCHANGE, INC., D/B/A CRYPTO.COM \| DERIVATIVES NORTH AMERICA**<br><br>**Oral Argument Requested** |

North American Derivatives Exchange, Inc., d/b/a Crypto.com | Derivatives North America ("CDNA") respectfully moves this Court, pursuant to Federal Rule of Civil Procedure 24, for leave to intervene in this proceeding (the "Action"). CDNA has conferred with the parties and (i) the United States of America and the Commodity Futures Trading Commission ("CFTC") (together, "Plaintiffs"), take no position on this motion; (ii) the State of Arizona indicated that it does not consent to intervention at this time but

will review this motion after it is filed; and (iii) KalshiEX LLC ("Kalshi") has no objection to this motion, however, Kalshi would object to the extent that this motion would impact the timing of a decision on the TRO currently being sought by the United States and CFTC.

## **PRELIMINARY STATEMENT**

In the Action, Plaintiffs seek declaratory and injunctive relief to restrain the Arizona Department of Gaming ("ADG") and other named Defendants from improperly and under color of Arizona state law assuming jurisdiction over, regulating and/or terminating the listing of lawful derivatives contracts on federally regulated markets—including CDNA, which Plaintiffs named as a "relevant entity" in its Complaint.  (Complaint for Declaratory and Injunctive Relief, ECF No. 1 ("Compl.") ¶ 25.)  The Action was consolidated with a case brought by Kalshi, *KalshiEX LLC v. Johnson*, Case No. 2:26-cv-01715-MTL (D. Ariz. compl. filed Mar. 12, 2026).

CDNA is directly affected by the outcome of this litigation.  Like Kalshi, CDNA is a federally regulated designated contract market ("DCM") that lists event contracts for trading in interstate commerce.  In a Cease-and-Desist Letter, dated May 21, 2025 ("C&D Letter") (Exhibit A), the ADG demanded that CDNA cease and desist offering certain event contracts—a letter that was substantially similar to the letter ADG sent to Kalshi on the same date.  Both CDNA and Kalshi are regulated by the CFTC, and the conduct that the ADG seeks to regulate (and prohibit) involves the listing of contracts that are authorized to be traded under federal law, and that by statute fall within the "exclusive jurisdiction" of the CFTC.

Pursuant to Rule 24(a), CDNA may intervene in the Action as of right because (i) its motion is "timely," since the Action was filed just eight days ago on April 2, 2026; (ii) CDNA "claims an interest relating to the property or transaction that is the subject of the action," given that it has an interest in offering its event contracts on a federally regulated DCM without fear of illegal state intervention or prosecution; (iii) the Action's disposition "may as a practical matter impair or impede [CDNA]'s ability to protect its interest," because the denial of declaratory and injunctive relief may permit the ADG to continue to unlawfully regulate trading on CDNA's DCM; and (iv) Plaintiffs—as CDNA's regulator, not advocate—may not "adequately represent that interest."  Rule 24(a)(2).

In the alternative, pursuant to Rule 24(b), CDNA should be allowed to permissively intervene because it "has a claim or defense that shares with the main action a common question of law or fact."  Here, the preemption issues alleged by Plaintiffs are the exact same issues that form the basis of CDNA's claims that the ADG cannot regulate CDNA's event contracts due to the CFTC's exclusive jurisdiction.  As Plaintiffs assert, federal law is clear: Congress expressly conferred "exclusive jurisdiction" over DCMs and the products they make available for trading to the CFTC to ensure a uniform national derivatives market.  7 U.S.C. § 2(a)(1)(A); (*see also*, Compl. ¶¶ 1, 44).  Amendments to the Commodity Exchange Act, 7 U.S.C. §§ 1 *et seq.* ("CEA") have repeatedly reinforced that policy decision, with Congress affirmatively excluding state authorities like the ADG from playing any role in overseeing contracts traded on federally regulated derivatives exchanges.  (*See* Compl. ¶¶ 43-51 68-70.)  And federal courts have long recognized that

the CFTC's regulation of the national derivatives market is exclusive and preempts state involvement.

Accordingly, CDNA brings this motion to intervene in the Action to obtain declaratory and injunctive relief to maintain the status quo and its right to continue offering contracts pursuant to federal law and regulation.

## BACKGROUND

### A.    CDNA Is a Federally Regulated DCM That Lists Sports Event Contracts.

CDNA is a federally regulated DCM that provides a market for trading a variety of derivatives products, including event contracts that are based on the occurrence, non-occurrence, or extent of occurrence of events or contingencies associated with live sporting events ("Sports Event Contracts").  The CFTC first approved CDNA as a DCM in 2004, confirming that its market complied with the CEA.  Most recently, in September 2025, the CFTC amended its registration, again confirming CDNA's compliance with the CEA.  For two decades, the entity now known as CDNA has operated continuously as a CFTC-regulated market offering event contracts.

All of CDNA's products are certified pursuant to the CEA and established CFTC rules and are offered in compliance with CFTC regulations, including standards for contract specifications, market integrity, and trader protections.  As a CFTC-registered self-regulatory organization, CDNA also administers a comprehensive market regulation program, functioning in a regulatory capacity to oversee trading in its markets.  This program is subject to CFTC oversight and has been reviewed and approved by the CFTC.

4

Congress made clear in the CEA's express preemption provision, 7 U.S.C. § 2(a)(1)(A), and throughout the CEA that state regulation of federally registered DCMs is preempted. Congress also has fully occupied the field of regulating federally registered DCMs, further reinforcing preemption of any overlapping state laws. Because CDNA's Sports Event Contracts are lawfully traded on a CFTC-registered DCM, federal law overrides state licensing or registration conditions that might otherwise apply, including those cited by the ADG in its C&D Letter. To the extent that Arizona law imposes regulations that overlap with the CEA's framework, it is preempted under Article VI, Section 2 of the United States Constitution.

Insofar as it would prohibit CDNA from listing contracts that are authorized under federal law, Arizona law is also preempted because it conflicts with the CEA's framework. CDNA cannot comply with both its federal law obligations and any purported obligations under Arizona law. Arizona law also undermines the CEA's goals of, among other things, creating a uniform system of derivatives trading. The ADG's threatened enforcement action poses a direct and imminent threat to CDNA's business and its users and disrupts the comprehensive federal framework that places CDNA exclusively under the CFTC's supervision.

**B.      The ADG Demands CDNA Cease Offering Sports Event Contracts in Arizona and Threatens State Civil and Criminal Penalties.**

On May 21, 2025, the ADG sent the C&D Letter to CDNA demanding that it "cease gambling operations in Arizona and desist from engaging in those activities in the future." (Ex. A at 2.) In the C&D Letter, the ADG asserted that event contracts constitute "taking

wagers" as defined by Arizona state law because "[w]hether a contract will pay its buyer depends on whether that person correctly predicted the result of the event and bought a contract for the correct outcome."  (*Id.* at 1.)

The ADG claimed CDNA was "not licensed and its operation of event wagering in Arizona is illegal."  (*Id.* (citing A.R.S. §§ 5-1301 *et seq.*).)  The ADG also asserted that CDNA did not meet "the regulatory requirements in Arizona" that included "licensing and background investigations, the prohibition on wagers by persons under twenty-one (21) years of age, and requirements relating to integrity monitoring and problem gambling." (*Id.*)  The ADG stated that it was a "crime in Arizona to engage in the business of accepting wagers" related to sports events.  (*Id.* at 2 (citing A.R.S. § 13-3305(A)).)  The ADG also alleged that CDNA may be "subject to a potential restitution award for those who lost money, and an action forfeiting all monies it acquired."  (*Id.* (citing A.R.S. §§ 13-804 and 13-2314).)

In ordering CDNA to "cease gambling operations" (*id.* at 2), the C&D Letter did not specify which of the more than 50 different event contracts offered for trading on CDNA might be considered "gambling operations," but the order suggests that the ADG views *all* event contracts as unlawful under Arizona state law, notwithstanding federal law authorizing such contracts and affording the CFTC exclusive jurisdiction over them.  The ADG warned that its "[f]uture actions may include the filing of criminal charges or a civil action against Crypto and/or its principals or employees."  (*Id.*)

6

## C.    Procedural Background

The Action is currently in its earliest stages.  Plaintiffs filed the Complaint on April 2, 2026, just one week ago.  (ECF No. 1.)  Plaintiffs brought suit against the state of Arizona, the ADG, and various officials "in response to Defendants' criminal prosecution and sending of cease and desist letters to CFTC-regulated entities in which Defendants assert that Arizona law permits Defendants to regulate markets over which Congress has granted 'exclusive jurisdiction' to regulate to the CFTC."  (Compl. ¶ 1.)  Plaintiffs named CDNA as a "relevant entity" in its Complaint.  (Compl. ¶ 25.)  On the same day the Complaint was filed, the Court consolidated the Action with the case brought by Kalshi against the ADG and state officials, which had been filed on March 12, 2026.  *KalshiEX LLC v. Johnson*, Case No. 2:26-cv-01715-MTL.   In the consolidated action, the consolidated Plaintiffs filed a Motion for a Preliminary Injunction and Temporary Restraining Order on April 8, 2026 (ECF No. 49), and CDNA understands that the Court has ordered supplemental briefing and intends to hold argument on the motion later on April 10, 2026.

## ARGUMENT

### I.    CDNA MAY INTERVENE AS OF RIGHT PURSUANT TO RULE 24(A)

Federal Rule of Civil Procedure 24(a) provides for intervention as of right where the proposed intervenor "(i) timely moves to intervene; (ii) has a significantly protectable interest related to the subject of the action; (iii) may have that interest impaired by the disposition of the action; and (iv) will not be adequately represented by existing parties." *W. Watersheds Proj. v. Haaland*, 22 F.4th 828, 835 (9th Cir. 2022) (citation omitted).

Courts in the Ninth Circuit "interpret these requirements broadly in favor of intervention," and their "review is guided primarily by practical considerations, not technical distinctions." *Id.* (citation omitted).  The court in CDNA's related case against state officials in Nevada, for example, permitted intervention as of right by a gaming industry association.  *See* Order Granting Motion to Intervene, N. Am. Derivatives Exch., Inc. v. Nevada, No. 2:25-cv-00978-APG-BNW (Sept. 9, 2025), ECF No. 69 ("Nevada Order"). For several reasons detailed *infra*, CDNA's interests are more implicated here than the gaming industry association in Nevada.  CDNA should be permitted to intervene as of right.

### A.     CDNA's Motion to Intervene Is Timely

CDNA has timely filed this motion, just eight days after the CFTC filed its Complaint on April 2, 2026.  In determining whether a motion to intervene is timely, courts in this Circuit "consider the totality of circumstances facing the would-be intervenor, with a focus on three primary factors: '(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay.'"  *Id.* at 835-86 (citation omitted).  Critically, the Ninth Circuit has found a motion to intervene timely when filed "less than three months after the complaint was filed and less than two weeks after [the defendant] filed its answer to the complaint."  *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011).  There, the court reasoned that the motion "was made at an early stage of the proceedings, the parties would not have suffered prejudice from the grant of intervention at that early stage, and intervention would not cause disruption or delay in the proceedings."  *Id.*; *see also*

Nevada Order at 1 (motion to intervene timely where filed less than three months after complaint).

CDNA first had notice of the Action when Plaintiffs filed the Complaint on April 2, 2026, only eight days ago. The same day, the Court directed that the case be consolidated with the action brought by Kalshi against Defendants, *KalshiEX LLC v. Johnson*, Case No. 2:26-cv-01715. Apart from preliminary injunction and TRO motions from Kalshi and Plaintiffs, the parties in the consolidated case have not engaged in any motion practice, and no discovery has been conducted. There would be no prejudice to Plaintiffs or Defendants from CDNA's intervention. On the other hand, for the same reasons discussed in Sections I.C. & D., *infra*, CDNA would be greatly prejudiced by the denial of this motion because its interests may be impaired if it cannot intervene and its interests are not adequately protected.

### B.    CDNA Has a Protectable Interest in This Action

CDNA has a legally protectable interest to be subject to the CFTC's exclusive oversight of DCMs. "To demonstrate a significant protectable interest, an applicant must establish that the interest is protectable under some law and that there is a relationship between the legally protected interest and the claims at issue." *Citizens for Balanced Use*, 647 F.3d at 897. This is a "'practical, threshold inquiry,' and '[n]o specific legal or equitable interest need be established.'" *Id.* (citations omitted).

Here, CDNA has a direct, substantial, and legally protectable interest in this litigation because it is a DCM that lists event contracts for trading, and it is one of the very entities targeted by the ADG's C&D Letter. Indeed, in the Nevada Order, the court held

that the gaming association had a protectable interest in that litigation despite it not being named as a relevant party in the underlying complaint, unlike here.  *See* Nevada Order. Moreover, Plaintiffs here purport to litigate the legality of actions such as CDNA's C&D Letter.  This is precisely the type of "intru[sion] on the exclusive federal scheme Congress designed to oversee national swaps markets" that prompted Plaintiffs to bring this Action. (Compl. ¶ 6.)

Moreover, CDNA has suffered the harm of needing to choose between operating despite the threat of state civil and criminal consequences for failure to comply with state law, on the one hand, and not operating, to comply with state law, but at the loss of business conduct federal law authorizes and regulates, on the other.  *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992).  That harm and the concrete interest it affects give CDNA Article III standing and a protectable interest justifying intervention.

### C. The Disposition of This Action May Impair or Impede CDNA's Ability to Protect Its Interests

CDNA's interests are affected by this proceeding such that the inability to intervene will potentially prejudice its interests.  The disposition of this Action will likely determine whether the ADG can interfere with the offering of event contracts on CDNA's platform, which CDNA maintains are subject to the CFTC's exclusive jurisdiction.  This could deprive CDNA of the revenue that it would otherwise derive from trading of event contracts by Arizona residents.

### D.    Absent Its Intervention in This Action, CDNA's Interests Are Not Adequately Protected

A proposed intervenor's interests are not adequately protected "if the applicant shows that representation of his interest '*may be*' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972) (emphasis added) (citation omitted).  Here, CDNA seeks to defend its own unique business interests in its DCM and event contracts.  The CFTC is CDNA's regulator, not its advocate.  CDNA cannot rely on Plaintiffs to adequately anticipate all of CDNA's legal arguments.  *See, e.g.*, *Driftless Area Land Conservancy v. Huebsch*, 969 F.3d 742, 748 (7th Cir. 2020) ("[T]he [state] Commission *regulates* the transmission companies, it does not *advocate for* them or represent their interests.  The transmission companies cannot be forced to rely entirely on *their regulators* to protect their investment.") (emphasis in original); *see also* Nevada Order at 2 (intervenors were "concerned about the competitive disadvantage they face[d]" and were not adequately represented by the state officials).[1]

## II.    ALTERNATIVELY, CDNA MAY PERMISSIVELY INTERVENE PURSUANT TO RULE 24(B)

Federal Rule of Civil Procedure 24(b)(1)(B) permits intervention by "anyone" who timely moves and "has a claim or defense that shares with the main action a common question of law or fact."  Fed R. Civ. P. 24(b)(1)(B); *see also Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*, 712 F.3d 1349, 1353 (9th Cir. 2013).  "Rule 24 traditionally receives

---

[1]    Due to the limited litigation that has occurred in the Action, CDNA cannot fully anticipate how Plaintiffs may not adequately protect its interests.

11

liberal construction in favor of applicants for intervention." *Novalpina Cap. Partners I GP S.A.R.L. v. Read*, 149 F.4th 1092, 1101 (9th Cir. 2025) (citation omitted). The Ninth Circuit has recognized three prongs for permissive intervention: whether "(1) [there are] independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1308 (9th Cir. 1997) (citation omitted). Permissive intervention is completely discretionary. *See id.* at 1307; *see also* Nevada Order at 3 (stating that court "would grant permissive intervention even if [intervenor] did not qualify for intervention as of right").

First, the jurisdictional requirement does not apply to federal question cases where, as here, the proposed intervenor is not raising new claims. *See Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011) ("We therefore clarify that the independent jurisdictional grounds requirement does not apply to proposed intervenors in federal-question cases when the proposed intervenor is not raising new claims."). Further, like CDNA, "intervenors that seek the same relief sought by at least one existing party . . . need not" establish Article III standing. *Washington v. FDA*, 108 F.4th 1163, 1172 (9th Cir. 2024) (alterations in original) (citation omitted).

Second, as detailed *supra* § I.A., CDNA promptly moved for intervention just a week after the CFTC filed its Action.

Third, "all that is necessary for permissive intervention is that intervenor's 'claim or defense and the main action have a question of law or fact in common.'" *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108 (9th Cir. 2002) ("Rule 24(b) 'plainly dispenses

with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation.'"). CDNA's claim shares common questions of law and fact with the Action, including:

- Whether the State of Arizona is preempted by the CEA from regulating the offering or listing of event contracts by CDNA (*see, e.g.*, Compl. ¶¶ 6, 11); and

- Whether the CFTC has exclusive jurisdiction over event contracts structured as swaps or futures contracts as defined by the CEA and traded on CFTC-regulated exchanges (*see, e.g.*, Compl. ¶¶ 1-2).

Given these common questions, the Court should exercise its discretion and grant CDNA permissive intervention.

## CONCLUSION

For the foregoing reasons, CDNA respectfully requests that this Court grant its motion to intervene.

Dated this 10th day of April, 2026.

*s/ Sean J. O'Hara*

Sean J. O'Hara (#024749)
Kercsmar & O'Hara
8800 East Raintree Drive, Suite 310
Scottsdale, Arizona 85260
Telephone: (480) 776-3432
sjo@kandolaw.com

David Meister (*pro hac vice* forthcoming)
Robert A. Fumerton (*pro hac vice* forthcoming)
Judith A. Flumenbaum (*pro hac vice* forthcoming)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
One Manhattan West
New York, NY 10001
Telephone: (212) 735-3000
david.meister@skadden.com
robert.fumerton@skadden.com
judy.flumenbaum@skadden.com

Shay Dvoretzky (*pro hac vice* forthcoming)
Parker Rider-Longmaid (*pro hac vice* forthcoming)
Sylvia O. Tsakos (*pro hac vice* forthcoming)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
1440 New York Avenue NW
Washington, DC 20005
Telephone: (202) 371-7000
shay.dvoretzky@skadden.com
parker.rider-longmaid@skadden.com
sylvia.tsakos@skadden.com

Nowell D. Bamberger (*pro hac vice* forthcoming)
Matthew C. Solomon (*pro hac vice* forthcoming)
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2112 Pennsylvania Ave. NW
Washington, DC 20037
Telephone: 202-974-1500
nbamberger@cgsh.com
msolomon@cgsh.com

*Attorneys for North American Derivatives Exchange, Inc., d/b/a Crypto.com | Derivatives North America*