**KRISTIN K. MAYES**
**Attorney General**
(Firm State Bar No. 14000)

Joshua D. Bendor (Bar No. 031908)
Alexander W. Samuels (Bar No. 028926)
William Y. Durbin (Bar No. 036941)
Joshua A. Katz (Bar No. 039449)
Office of the Arizona Attorney General
2005 N. Central Avenue
Phoenix, AZ 85004-1592
(602) 542-3333
Joshua.Bendor@azag.gov
Alexander.Samuels@azag.gov
William.Durbin@azag.gov
Joshua.Katz@azag.gov
ACL@azag.gov

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| KalshiEX LLC, | No. CV-26-01715-PHX-MTL |
| Plaintiff, | Hon. Michael T. Liburdi |
| The United States of America; and Commodity Futures Trading Commission, | |
| Consolidated Plaintiffs, | |
| v. | **DEFENDANTS' NOTICE RE PROPOSED FORM OF PRELIMINARY RELIEF** |
| Jackie Johnson, et al., | |
| Defendants, | |
| State of Arizona, et al., | |
| Consolidated Defendants. | |

Pursuant to the Court's Order of April 22, 2026 (Doc. 84), Defendants met and conferred with the United States of America and the Commodity Futures Trading Commission ("CFTC") (together, "Federal Plaintiffs"), KalshiEX, LLC ("Kalshi"), and North American Derivatives Exchange, Inc., d/b/a Crypto.com | Derivatives North America ("CDNA"). The parties were unable to reach agreement on a proposed form of preliminary injunctive relief.[1]

Understanding that the Court has determined to convert the TRO to a preliminary injunction, and without waiving any appellate rights, Defendants hereby provide the Court notice of their proposed form of preliminary injunctive relief:

> Defendants are preliminarily enjoined from advancing *State v. KalshiEX LLC*, Nos. CR 2026-000173-001, -002 (Maricopa Cnty. Super. Ct.), and from filing any new criminal or civil actions to enforce Arizona's gambling laws related to event contracts listed on DCMs registered with the CFTC pursuant to 17 C.F.R. Part 38. Defendants' authority to investigate possible violations of Arizona's gambling laws, including through the issuance of subpoenas, is not enjoined by this Order.

The first sentence of Defendants' proposal is consistent with the language of the Court's Order granting the CFTC's motion for temporary restraining order (Doc. 65), with two changes. First, Defendants have substituted language for "CFTC-regulated" to make clear the order would apply to entities the CFTC has registered as DCMs through its formal regulatory approval process. Second, Defendants have taken the additional step to remove the reference to A.R.S. §§ 5-1301, *et seq.*, which relates to event wagering only. In so doing, Defendants defer to the Court's evident intention to enjoin enforcement of Arizona's gambling laws more broadly—including the State's ban on election wagering, A.R.S. § 16-1015. Defendants understand the Court envisioned them standing

---

[1] While the parties did not reach an agreement, Plaintiffs did agree to narrow their request, and seek to enjoin only the use of subpoenas and other compulsory investigative processes.

1

down entirely in filing or advancing litigated cases to enforce Arizona's gambling laws related to event contracts listed on CFTC-registered DCMs.[2]

The second sentence is critical to Defendants' sovereign interests. Defendants respectfully request this Court adopt this language for two independent reasons. For one thing, Plaintiffs never asked the Court to enjoin Defendants from investigating potential violations of Arizona's gambling laws. On top of that, while an injunction barring the State from prosecuting violations of law imposes a heavy burden, enjoining investigations would impose an even heavier burden—a burden not justified by the preliminary findings the Court has reached.

## I.    The Court should not grant relief Plaintiffs never requested.

In the two motions, three Complaints, and dozens of pages of substantive briefing Plaintiffs have filed, the Court will not find a single request to enjoin Defendants from *investigating* potential violations of Arizona law.[3] In fashioning preliminary relief, this Court should not take the further step of enjoining actions the Plaintiffs never so much as mentioned let alone justified. Plaintiffs cannot have met their burden to show that the Court should enjoin Defendants from investigating potential violations of Arizona law

---

[2] Defendants note that, in its April 10 Order, the Court recognized there was a "limiting principle" to which event contracts have "downstream financial consequences that are direct and proximate to the underlying event . . . ." Doc. 65 at 3. Defendants respectfully request that the forthcoming order make clear which event contracts go beyond that "limit," and as to which the State is not enjoined from enforcement.

[3] Plaintiffs have asked only for an injunction prohibiting Defendants from "enforcing the challenged provisions or any other state laws pertaining to gambling or wagering, as applied to CFTC-Designated Contract Markets" (CFTC Compl. at 32) or, unbelievably broadly, "prohibiting Arizona from applying its laws against CFTC-regulated DCMs" (Doc. 49 at 20). Investigations are different. The CFTC itself recognizes that investigations are separate and distinct from, and many times do not lead to, administrative or litigated enforcement actions. *See* CFTC, Enforcement Manual (May 20, 2020) https://www.cftc.gov/sites/default/files/2021-05/EnforcementManual.pdf at 21 ("The Division may send a Closing Letter to notify individuals and entities as early as practicable when staff has decided to close an investigation as it relates to them and thus not to recommend an enforcement action against them to the Commission.").

when Plaintiffs have not asked for that relief.  *See U.S. v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) (emphasizing the importance of the party-presentation principle).

**II.    At this preliminary state, the Court should not intrude any further than necessary into the State's sovereign authority.**

Even if the Court were to ignore Plaintiffs' apparent disinterest in injunctive relief as to investigations, the Court should still adopt Defendants' language.  This is true for two related reasons.  First, barring Defendants from investigating potential violations of Arizona law would be a serious intrusion into State authority.  Second, the scant findings at this stage do not call for such extraordinary relief.

**A.    Restraining investigations unduly intrudes on sovereign interests.**

***First***, restraining state officials from investigating potential violations of state law by issuing or enforcing subpoenas and other compulsory processes intrudes on the State's sovereign interests and judicial functions.  A state has a "sovereign interest" in the retention of its authority to "exercise . . . sovereign power over individuals and entities within [its] jurisdiction," including "the power to create and enforce a legal code, both civil and criminal."  *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 601 (1982).  Arizona has a sovereign interest in maintaining the legal framework set up by the 2020 Gaming Act, A.R.S. §§ 5-1301 *et seq.*, and Tribal-State Gaming Compacts, including through investigation of potential breaches of that framework.

The State "suffers a form of irreparable injury" "[a]ny time" it is "enjoined by a court from effectuating statutes enacted by representatives of its people."  *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 148 F.4th 648, 656 (9th Cir. 2025) (quoting *Trump v. CASA, Inc.*, 606 U.S. 831, 860–61 (2025)).  Defendants already suffer an injury from not being able to file or advance any civil or criminal actions in this area.  This is unusual enough interference in state judicial and enforcement interests.  An injunction that reaches into the techniques and procedures of the prosecutor's office would extend too far.  The Supreme Court has held that "recognition of the need for a proper balance between state and federal authority counsels restraint in the issuance of injunctions against state officers

engaged in the administration of the states' criminal laws in the absence of irreparable injury which is both great and immediate." *City of Los Angeles v. Lyons*, 461 U.S. 95, 112 (1983).

Enjoining Defendants from even investigating potential violations of Arizona's duly enacted gambling statutes would impede the State from furthering its laws' public-welfare considerations, like restricting sports betting to persons 21 years of age or older, and investigating entities that may be facilitating evasion of that restriction. In *Maryland v. King*, 567 U.S. 1301 (2012), the Supreme Court stayed a lower-court injunction that would have prevented the state from undertaking compulsory investigative efforts (collecting DNA from individuals arrested for violent felonies). *Id.* at 1303. That was because such an injunction would inflict ongoing harm to "law enforcement and public safety interests." *Id.* The Supreme Court held that a bar on the use of that compulsory investigative tool would constitute irreparable injury to the state, particularly where pausing that collection would result in "ongoing and concrete harm" to the state's ability to investigate and ultimately prosecute crimes. *Id.* at 1303–04.

**B.**   **The serious intrusion of barring investigations is not justified by any findings made at this preliminary stage.**

*Second*, circumscribing the Order is appropriate at this preliminary stage, where (a) the Court has found, on an undeveloped factual record, only that Plaintiffs might, someday, show preemption and (b) any investigations by Defendants do not pose "great and immediate" irreparable injury to Plaintiffs. *Lyons*, 461 U.S. at 112.

In its April 10 Order, this Court found the CFTC had "demonstrated a reasonable chance of success in showing that the Act, at a minimum, field preempts Arizona law." Doc. 65 at 3. But this Court has not invalidated any aspect of Arizona's gambling laws. Indeed, this Court has not made a final determination on preemption, and, as this Court well knows, the preemption question is hotly contested. Just a few days ago, the U.S. Court of Appeals for the Sixth Circuit denied Kalshi's motion for an injunction pending appeal of the Southern District of Ohio's decision not to enjoin enforcement of Ohio's

sports-betting laws against Kalshi. *KalshiEX, LLC v. Schuler*, No. 26-3196, slip op. at 1 (6th Cir. Apr. 24, 2026) [ECF No. 26-2]. The Sixth Circuit found, among other things, that the Commodity Exchange Act ("CEA") did ***not*** preempt state gambling laws, on field preemption grounds or otherwise. *Id.* at 6–13. That Court pointed to the various savings clauses in the CEA and found the case ***not*** to be "one of those rare ones" of comprehensive field preemption. *Id.* at 10 (citing *In re NOS Commc'ns,* 495 F.3d 1052, 1058 (9th Cir. 2007)).[4]

If the Ninth Circuit finds similarly in deciding any of the cases argued on April 16, 2026, and Arizona law is ***not*** preempted, the scope of this Court's forthcoming order will be the measure of Defendants' injury. If Defendants have been restrained from using their compulsory investigative powers, they will have lost time building potential cases. What's more, evidence of potential violations may be lost in the meantime. These losses cannot be recouped.[5]

At the same time, neither the Federal Plaintiffs nor the DCMs can demonstrate irreparable injury, let alone one that is both great and immediate. This Court based its finding of irreparable harm to the Federal Plaintiffs, in part, on *Arizona v. U.S.*, 567 U.S.

---

[4] The Sixth Circuit also found the presumption against preemption to apply. *KalshiEX, LLC v. Schuler*, No. 26-3196, slip op. at 11 (6th Cir. Apr. 24, 2026) [ECF No. 26-2] ("We therefore must begin with the presumption that Congress did not mean to preempt Ohio's 'historic police powers' unless the [CEA] discloses that result as 'the clear and manifest purpose of Congress.'") (citing *Wyeth v. Levine*, 555 U.S. 555, 565 (2009)). What is more, that Court assumed without deciding (at 6) that Kalshi's sports-related contracts *are* swaps and *still* ruled for the State. That issue, which might be determinative if decided for the State, is still disputed in this case and the cases argued before the Ninth Circuit on April 16, 2026.

[5] "[T]he basic function of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits." *L.A. Mem'l Coliseum Comm'n v. NFL*, 634 F.2d 1197, 1200 (9th Cir. 1980). Defendants have a compelling interest in investigating potential violations of law even if such laws are currently being subject to a legal challenge. If the State is entirely forbidden from investigating, evidence could disappear or memories fade, making it impossible for the State to enforce its laws later if the injunction is modified or vacated, resulting in irreparable harm to the State. Permitting investigations and the gathering and evaluation of potential evidence to continue is the status quo.

387, 416 (2012).  In that case, "the [Supreme] Court affirmed in part a preliminary injunction issued based on a finding of irreparable harm that would be caused by the enforcement of preempted state law." Doc. 65 at 3.  But *Arizona* also recognized that the lower courts should ***not*** have enjoined the provision of state law permitting local authorities to take certain investigative steps.  *See id.* at 416 ("It was improper, however, to enjoin § 2(B) [regarding checks of immigration status] before the state courts had an opportunity to construe it and without some showing that enforcement of the provision in fact conflicts with federal immigration law and its objectives.").

Federal Plaintiffs are mistaken to assert (Doc. 80 at 5) that the same irreparable harms that the Court decided justify the TRO apply equally to the compulsory investigative steps Defendants contemplate, like issuing subpoenas.  There is no Supremacy Clause violation or injury for steps short of enforcement, such as investigations.  Nor do DCMs face any great and immediate irreparable injury from mere investigation, including complying with compulsory processes.  Defendants acknowledge there may be some cost for DCMs to respond to any investigative inquiries, but there is not necessarily any irreparable injury from compulsory process.  DCMs' costs would be no more than those of other businesses continuing to operate while on notice that state officials view their conduct as violating state law.  For their part, the Federal Plaintiffs would bear no comparable costs.  Indeed, if the CFTC were harmed by investigations, it should have filed its action against Defendants when the Arizona Department of Gaming sent cease-and-desist letters to DCMs almost a year ago.

\*\*\*

For all these reasons, the Court's forthcoming order should make clear that Defendants maintain the ability to investigate potential violations of Arizona law, including through issuance of subpoenas.

RESPECTFULLY SUBMITTED this 29th day of April, 2026.

**KRISTIN K. MAYES**
**ATTORNEY GENERAL**


By  */s/ William Y. Durbin*
    Joshua D. Bendor
    Alexander W. Samuels
    William Y. Durbin
    Joshua A. Katz
    Office of the Arizona Attorney General
    2005 N. Central Ave.
    Phoenix, AZ 85004

*Attorneys for Defendants*